**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HONX, INC.,[1] | ) | Case No. 22-90035 (MI) |
| | ) | |
| Debtor. | ) | |
| | ) | (Emergency Hearing Requested) |

**DEBTOR'S <u>EMERGENCY</u>
MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING
THE DEBTOR TO (A) CONTINUE TO OPERATE ITS
CASH MANAGEMENT SYSTEM, (B) CONTINUE USE OF ITS
BANK ACCOUNT, AND (C) CONTINUE TO PERFORM INTERCOMPANY
TRANSACTIONS, (II) AUTHORIZING THE DEBTOR'S BANK TO CHARGE
CERTAIN FEES AND OTHER AMOUNTS, AND (III) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than May 2, 2022.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 2, 2022 at 8:00 a.m. (prevailing Central time).**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954544. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is HONX, Inc. (2163). The location of the Debtor's service address in this chapter 11 case is: 1501 McKinney Street, Houston, Texas, 77010.

The above-captioned debtor and debtor in possession (the "Debtor") states as follows in support of this motion:

## Relief Requested

1.      The Debtor seeks entry of interim and final orders, substantially in the forms attached hereto (the "Interim Order" and "Final Order"):  (a) approving the Debtor's continued use of its existing Bank Account (as defined below) including honoring certain prepetition obligations related thereto (but excluding Bank Fees, as defined below); (b) authorizing, but not directing, any bank of the Debtor to honor certain transfers, provided that sufficient funds are available in the applicable accounts to cover such transfers, and charge Bank Fees (as defined below); and (c) granting related relief.

2.      In addition, the Debtor requests that the Court schedule a final hearing approximately twenty-one days after the commencement of this chapter 11 case, or as soon thereafter as is convenient for the Court (as defined below), to consider approval of this motion on a final basis.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtor confirms its consent to the entry of a final order by the Court.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 345, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

6.     The Debtor is a wholly owned subsidiary of Hess Corporation ("Hess"), a global energy company, and the corporate successor of Hess Oil Virgin Islands Corporation ("HOVIC"). The Debtor constructed, owned, and operated an oil refinery in St. Croix, U.S. Virgin Islands (the "Refinery") from the beginning of its creation in 1965 until 1998.  In 1998, the Debtor entered a joint venture with the national oil company of Venezuela, Petróleos de Venezuela, S.A., in which each held 50% ownership in a company called HOVENSA L.L.C. ("HOVENSA").  HOVENSA acquired the Refinery through the joint venture transaction and operated the Refinery from October 1998 until February 2012.  From February 2012 through March 2015, HOVENSA operated the Refinery as an oil storage and distribution center until the Refinery was ultimately shut down.  The Debtor is a non-operating entity without any employees whose primary activity is defending against asbestos and other litigation related to its prior ownership and operation of the Refinery.

7.     The first asbestos claim was filed in 1987 against HOVIC and, since that time, more than 1,500 plaintiffs have filed suit against HOVIC, Hess, and/or the Debtor as HOVIC's successor in interest.  The Debtor is currently facing approximately 580 asbestos and toxic tort claims in the Superior Court of the Virgin Islands, and could face an additional 500, or more, claims in the next several years based on discussions with current plaintiffs' counsel.  The Debtor anticipates that, absent the filing of this chapter 11 case, litigation of asbestos-related claims could consume an enormous amount of its and Hess's time and resources for decades to come.

8.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and

circumstances giving rise to the Debtor's chapter 11 case and in support of this motion is set forth in the *Declaration of Todd R. Snyder, Chief Administrative Officer of HONX, Inc., in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously with this motion and incorporated by reference herein.  The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### The Debtor's Cash Management System

**I.**    **Overview.**

9.    As of the Petition Date, the Debtor has approximately $6,200,000 in cash.  This cash is maintained in one bank account at JP Morgan Chase (the "Cash Management Bank") in New York, NY (the "Bank Account").[3]  The Bank Account will serve as a funding source for any postpetition expenses that the Debtor incurs during the pendency of this chapter 11 case.  Further, the Bank Account serves as the funding account under that certain funding agreement (as may be amended, modified, or supplemented and restated from time to time, the "Funding Agreement") dated as of April 27, 2022, with Hess.

10.    All payments and other funds that are received by the Debtor, including payments received under the Funding Agreement, are deposited into the Bank Account.  Following execution of the Funding Agreement, such cash receipts will almost entirely consist of cash payments received under the Funding Agreement.  Because the Bank Account serves as the funding account under the Funding Agreement, it is expected to maintain at least $3 million in cash at all times.  All amounts in the Bank Account are held in U.S. dollars.  The Bank Account also serves as the

---

[2]    Capitalized terms used but not otherwise defined in this motion have the meanings ascribed to them in the First Day Declaration.

[3]    The last four digits of the Bank Account number are 8727.

Debtor's disbursement account and will be used to pay the Debtor's costs and expenses during the pendency of this chapter 11 case.

11.     The Debtor's Bank Account belongs to the Debtor, but is managed and operated as a part of Hess's integrated financial system that tracks available funds and pay debts, fees, and other expenses as they become due (the "Hess Cash Management System").  Historically, costs and expenses incurred by Hess on account of the Debtor's Bank Fees and franchise taxes were typically accounted for as an intercompany payable owed by the Debtor to Hess.  In anticipation of this chapter 11 case, and under the terms of the Funding Agreement, the Debtor and Hess agreed that Hess would relinquish any control it had over the Bank Account or access to funds in the Bank Account, and would only maintain the ability to continue administering the Bank Account as a part of the Hess Cash Management System.  This arrangement was negotiated for in the Funding Agreement and ensures that the Debtor has complete control over its property while also preserving the benefits it receives from operating its Bank Account within the Hess Cash Management System.  These benefits include the administrative and accounting benefits provided by a professionally staffed treasury department that has access to sophisticated accounting tools and software and the benefits of keeping the Bank Account in a cash management system that has its history readily available and traceable.  Recreating such a recordkeeping and accounting infrastructure, when the Debtor already benefits from access to one paid for by Hess, would represent a senseless cost imposed on the estate and its creditors.  Moreover, for as long as the Funding Agreement is in place, any costs and fees associated with maintaining the Bank Account will not accrue as an intercompany payable owed by the Debtor to Hess.

12.     To ensure the Debtor has complete control over the Bank Account, disbursements from such account can only be made with the consent of the Debtor's Chief Administrative Officer,

and an independent director, which do not include any employees, officers, or directors of Hess. Hess can access reports on the status of funds in the Bank Account, but, importantly, cannot make withdrawals from the Bank Account or direct the use of the funds therein. For the avoidance of doubt, while important information about the Bank Account is accessible to Hess, the capacity to authorize transfers of funds or checks resides with the Debtor's independent management team and independent directors alone. Thus, maintaining the Bank Account within the Hess Cash Management System provides the Debtor with numerous benefits while ensuring it remains independent from Hess.

**II.      The Funding Agreement.**

13.      As further described in the First Day Declaration, the Debtor is party to a Funding Agreement with Hess, pursuant to which the Debtor, as payee, receives cash from Hess, the payor. The Funding Agreement is not a loan agreement. It requires Hess to provide funding to pay for the costs and expenses of the Debtor incurred during the pendency of this chapter 11 case, including the costs of administering the case and any and all other costs and expenses of the Debtor incurred postpetition, subject to the Debtor satisfying certain conditions and continuing to meet ongoing case Milestones (as defined in the Funding Agreement), without any corresponding repayment obligation by the Debtor. Under the Funding Agreement, Hess is obligated to fund the Debtor's day-to-day costs and expenses upon request to the extent that funds held in the Bank Account are insufficient to pay these costs. Upon a proper funding request under the Funding Agreement, Hess will wire the requested funds into the Bank Account.

14.      Additionally, the Funding Agreement requires Hess to provide certain funding for an asbestos trust pursuant to section 524(g) of the Bankruptcy Code, which may be increased by agreement of the parties, without any corresponding repayment obligation by the Debtor. Finally, in the event the Funding Agreement is terminated by Hess upon an Event of Default (as defined in

the Funding Agreement) by the Debtor, there is no requirement for the Debtor to return any amounts received under the Funding Agreement.

**III.    The Debtor's Bank Fees and other Intercompany Payables.**

15.    The Debtor incurs periodic service charges and other fees in connection with the maintenance of its Bank Account (the "Bank Fees"). Hess pays the Cash Management Bank an aggregate of approximately $50–100 per month on account of the Bank Fees, which are generally due and paid monthly. Prior to the effective date of the Funding Agreement, the obligations of the Debtor on account of the Bank Fees were typically accumulated as an intercompany payable, which Hess recorded as an intercompany account receivable (such transactions, "Intercompany Transactions," and the claims arising therefrom, "Intercompany Claims"). Upon entry into the Funding Agreement, Hess will continue to pay the Bank Fees on behalf of the Debtor without increasing its intercompany account balances. Any Bank Fees accrued prior to the Petition Date, but payable after the Petition Date, will be accounted for as an Intercompany Transaction.

16.    Historically, apart from the Bank Fees, Hess also pays other fees and expenses on behalf of the Debtor, such as franchise taxes. The obligations of the Debtor on account of such other fees and expenses are typically accumulated similar to other Intercompany Transactions, as an intercompany payable by the Debtor and an intercompany receivable by Hess. Solely for accounting purposes and diligent record keeping, Hess will continue to note any such fees and expenses, other than Bank Fees or other Bank Account management fees, as an intercompany payable, including both fees and expenses accrued pre- and postpetition. To be clear, the Debtors are not seeking relief by this motion to make cash payments to Hess on account of the Intercompany Transactions but merely to continue accounting for the same in the ordinary course of business in accordance with prepetition practices.

17.     The Intercompany Transactions are an essential component of the Debtor's operations and the centralized Hess Cash Management System.   Any interruption of the Intercompany Transactions could disrupt the Debtor's ability to operate its chapter 11 case efficiently, which may result in significant harm to the Debtor's estate and its stakeholders.   The Debtor seeks authority—and, to the extent applicable, relief from the automatic stay—to continue the Intercompany Transactions on a postpetition basis, in a manner substantially consistent with the Debtor's past practice.[4]

## IV.   Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines as to the Bank Account and Books and Records.

### A.     Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines as to the Bank Account

18.     Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a). To comply with section 345 of the Bankruptcy Code, the *Region 7 Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").  Section 345(b) of the Bankruptcy Code requires a debtor's bank to post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department,

---

[4]    This motion provides an overview of the Debtor's typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this motion.  To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtor, out of an abundance of caution, seeks authority to honor such obligations consistent with past practices.

agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).

19.     The Cash Management Bank is an approved authorized depository under the U.S. Trustee Guidelines because the Debtor is a current customer.  Likewise, the Cash Management Bank is insured by the FDIC, and to the extent any amounts in the Bank Account exceed the insured limit, the Cash Management Bank will post a bond in accordance with a preexisting depository agreement with the U.S. Trustee.  Thus, the Cash Management Bank is compliant with the U.S. Trustee Guidelines.

**B.     Compliance with U.S. Trustee Guidelines as to Books and Records**

20.     In carrying out its corporate functions, the Debtor maintains books and records to document its financial condition as part of an overarching recordkeeping system managed by Hess (collectively,  the  "Books and Records").  To  avoid  significant  delays  and  to  minimize administrative expense to its estate, the Debtor requests authorization to continue using all of the Books and Records in a manner consistent with prepetition practice, without reference to the Debtor's status as a chapter 11 debtor in possession.

**Basis for Relief**

**I.     The Court Should Approve the Debtor's Continued Use of Its Existing Bank Account as Essential to the Debtor's Operations and Chapter 11 Case.**

21.     The U.S. Trustee Guidelines require debtors in possession to, among other things:  (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for payment of taxes, including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor-in-possession

status of the chapter 11 debtor, including checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement. These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims. Given the relationship between the Debtor's Bank Account and the Funding Agreement, enforcement of these provisions of the U.S. Trustee Guidelines during this chapter 11 case would conflict with the Funding Agreement and lead to increased administrative expenses. The Debtor requests that the Court allow it to maintain its existing Bank Account, which is vital to the Debtor's chapter 11 case, including as the funding account under the Funding Agreement, which will be maintained in accordance with the Funding Agreement.

22.     Maintaining the Bank Account within the Hess Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Bankruptcy courts have recognized that companies utilize an integrated cash management system "to manage the cash of operating units in a cost-effective, efficient manner," *In re Sandridge Energy, Inc.*, 2018 WL 889357*3 (Bankr. S.D. Tex. 2008), and treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). As a result, courts have concluded that cash management systems allow the Debtor "to administer more efficiently its financial operations and assets," *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995), and courts have acknowledged that the requirement to maintain all accounts

separately "would be a huge administrative burden and economically inefficient." *See In re Columbia Gas Systems Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993).

23.     Requiring the Debtor to adopt a new, segmented cash management system during this chapter 11 case would be expensive, time consuming, burdensome, and unnecessarily disruptive to the Debtor's chapter 11 case.  The Debtor, a non-operating entity, currently benefits from access to the accounting tools, software, and personnel employed in Hess's treasury department.  Were it to leave the Hess Cash Management System, the Debtor would need to provide its own treasury services as it would lose access to Hess's tools, software, and personnel.  These costs would ultimately be borne by the Debtor's creditors, asbestos claimants, and other stakeholders.  By contrast, maintaining the Bank Account in the Hess Cash Management System will facilitate the Debtor's smooth transition into chapter 11 by, among other things, minimizing delays in paying postpetition expenses and eliminating administrative inefficiencies.  Finally, maintaining the Bank Account in the current Hess Cash Management System will allow the Debtor's limited management team to focus on their daily responsibilities as opposed to the non-accretive task of reconstructing a separate cash management system.

24.     Parties in interest will not be harmed by the Debtor's Bank Account remaining a part of the Hess Cash Management System and continuing to document the Intercompany Transactions because the Debtor has implemented appropriate mechanisms to ensure that Hess cannot control the Bank Account or otherwise spend the Debtor's cash.  Specifically, with the assistance of its advisors, the Debtor has implemented internal control procedures that prohibit payments out of the account without the prior approval of the Debtor's Chief Administrative Officer and at least one other disinterested party.  In light of such protective measures, maintaining the status quo is in the best interests of its estate and creditors.

**II.    Authorizing the Debtor to Continue Using Debit, Wire, Credit Card, and ACH Payments Is Warranted.**

25.    The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent such guidelines require the Debtor to make all disbursements by check. In particular, the U.S. Trustee Guidelines state that all disbursements of estate funds should be made by check.  The Debtor intends to conduct transactions through wires, ACH transactions, direct deposits, and other similar methods.  If the Debtor's ability to conduct transactions by these methods is impaired, the Debtor's access to the cash in the account will be unnecessarily impeded, and its estate will incur additional costs.

**III.   Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts on a Postpetition Basis is Warranted.**

26.    Out of an abundance of caution, and to the extent necessary, the Debtor further requests that the Court authorize and direct the Cash Management Bank to receive, process, honor, and pay, to the extent funds are available in the Bank Account, any and all checks, electronic fund transfer, ACH payments and other instructions, and drafts payable through, or drawn or directed on, the Bank Account after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, or ACH payments are dated prior or subsequent to the Petition Date.  The Debtor also requests that, to the extent a bank honors a prepetition check or other item drawn on any account that is the subject of this motion, either at the direction of the Debtor or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such bank will not be deemed to be liable to the Debtor or to its estate on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because such banks are not in a position to independently verify or audit whether the Debtor may pay a particular item in accordance with a Court order or otherwise.  The Debtor needs to conduct transactions by debit,

12

electronic fund, ACH payments, and other similar methods during the pendency of this chapter 11 case.

27.     The Debtor requests that the Court authorize the continued use of the existing Hess Cash Management System to facilitate the Debtor's transition into chapter 11. The Debtor requests that the Court authorize the Cash Management Bank to continue to maintain, service, and administer the Bank Account as an account of the Debtor as a debtor in possession, without interruption consistent with historical practices.[5] Notwithstanding the foregoing, any check, draft, or other notification that the Debtor advises the Cash Management Bank to have drawn, issued, or otherwise presented before the Petition Date (if any) may be honored by the Cash Management Bank only to the extent authorized by order of the Court.

## IV.    Cause Exists for Waiving Certain of the U.S. Trustee Guidelines.

28.     Under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor-in-possession" operating, payroll, and tax accounts at one or more authorized depositories. However, the Debtor's operations are funded pursuant to the Funding Agreement, as described above and in the First Day Declaration. The Funding Agreement allows the Debtor to meet its postpetition operating expenses, funds this chapter 11 case, and sets aside funding for any section 524(g) asbestos trust confirmed by a chapter 11 plan.

29.     Because the Bank Account is vital to the Debtor's ability to fund this chapter 11 case, and the maintenance of which was bargained for in the Funding Agreement, requiring the

---

[5]   For the avoidance of doubt, any postpetition Bank Fees will be paid by Hess and will not be accounted for as an Intercompany Transaction, as agreed upon in the Funding Agreement.

Debtor to transfer funds to other accounts or banks would be unduly burdensome to the Debtor's operations and would likely lead to increased administrative expenses.

30.     For the reasons stated herein, cause exists to waive the U.S. Trustee Guidelines and allow the Debtor to continue to maintain the Bank Account consistent with historical practices.

## V.     Cause Exists for Modification of the Automatic Stay on a Limited Basis to Effectuate Certain Intercompany Claims and the Relief Requested Herein.

31.     Out of an abundance of caution, the Debtor further seeks the authority, pursuant to sections 105(a), 362(a), and 362(d) of the Bankruptcy Code to modify the automatic stay, solely to the extent requested herein, to permit Hess to continue engaging in the practice of recording the costs and fees paid on behalf of the Debtor as an intercompany receivable on Hess's books and as an intercompany payable on the books of the Debtor, or the Intercompany Transactions.  At any given time, these Intercompany Transactions may give rise to Intercompany Claims.  These limited Intercompany Claims include franchise tax payments (but which, for the avoidance of doubt, do not include Hess's payment of the postpetition Bank Fees).  The Debtor and Hess track all fund transfers in the accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.  The Debtor and Hess will continue to maintain records of such Intercompany Transactions.

32.     Because certain of the Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Hess Cash Management System, the Debtor respectfully requests the authority to continue conducting them postpetition without need for further Court order.  Moreover, to the extent Hess needs relief from the automatic stay to continue accounting for these Intercompany Transactions in the ordinary course of business and consistent with past practices, cause exists here to grant such relief.

33.     Section 362(d)(1) of the Bankruptcy Code permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *See* 11 U.S.C. § 362(d).   Here, cause exists to lift or modify the automatic stay regarding the Intercompany Transactions and Intercompany Claims because such relief will permit the Debtor to continue to benefit from the same system of accounting, record keeping, and cost management while facilitating its chapter 11 case.   Stay modifications of this kind are a great service to the estate and its creditors because such stay modifications obviate the need for the Debtor to reconstruct systems of payment of such fees and costs, which Hess already does in the ordinary course.    In the Debtor's business judgment, such relief is fair and reasonable under the circumstances of this chapter 11 case.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

34.     The Debtor has sufficient funds to pay the amounts described in this motion by virtue of the Funding Agreement.   In addition, under the Debtor's existing cash management system, the Debtor can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.   The Debtor does not believe that checks or wire transfer requests, other than those relating to authorized payments, will be honored inadvertently. Therefore, the Debtor respectfully requests that the Court authorize and direct all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### Emergency Consideration

35.     The Debtor requests emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."   Bankruptcy Rule 6003; *see also* Bankruptcy Local Rule 9013-1.

The Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of its business and that any delay in granting the relief requested could hinder the Debtor's business and cause irreparable harm.  The failure to receive the requested relief during the first twenty-one days of this chapter 11 case could severely disrupt the Debtor's operations at this critical juncture and imperil the Debtor's chapter 11 case.  The Debtor has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and requests that the Court approve the relief requested in this motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(h)

36.    The Debtor seeks a waiver of any stay of the effectiveness of an order approving this motion under Bankruptcy Rule 6004(h), to the extent it applies.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Any delay in granting the relief requested herein likely would be disruptive to the Debtor, thereby causing harm to the Debtor's estate.  Ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### Reservation of Rights

37.    Nothing contained in this motion or any actions taken pursuant to any order granting the relief requested by this motion is intended or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, or validity of any particular claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a

16

request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any claims, causes of action or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (g) an admission as to the validity, priority, enforceability or perfection of any lien on (contractual, common law, statutory, or otherwise), security interest in, or other encumbrance on property of the Debtor's estate, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **Notice**

38.     The Debtor will provide notice of this motion to:  (a) the U.S. Trustee; (b) the Top Asbestos Counsel List[6]; (c) counsel to Hess, Haynes and Boone, LLP, Attn:  Charles A. Beckham (1221 McKinney Street #4000, Houston, Texas 77010) and Martha Wyrick (2323 Victory Ave., Suite 700, Dallas, Texas 75219); (d) Burns Charest LLP, as counsel in the majority of pending asbestos cases, 900 Jackson Street, Suite 500, Dallas, Texas 75202, Attn: Warren Burns; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the United States Environmental Protection Agency; (i) the office of the attorney general in the states where the Debtor conducts its business operations; (j) the Cash Management Bank; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

---

[6]     As defined in the Creditor Matrix Motion filed contemporaneously herewith.

## Conclusion

The Debtor requests entry of the Interim and Final Orders, granting the relief requested

herein and granting such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
April 28, 2022

*/s/  Matthew D. Cavenaugh*
_____
**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:        mcavenaugh@jw.com
              jwertz@jw.com
              vpolnick@jw.com

*Proposed Co-Counsel to the Debtor*
*and Debtor in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (*pro hac vice* pending)
Matthew C. Fagen (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        christopher.greco@kirkland.com
              matthew.fagen@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Jaimie Fedell (TX Bar No. 24093423) (*pro hac vice* pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        jaimie.fedell@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Michael F. Williams, P.C. (*pro hac vice* pending)
Daniel T. Donovan, P.C. (*pro hac vice* pending)
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5000
Facsimile:  (202) 389-5200
Email:        michael.williams@kirkland.com
              daniel.donovan@kirkland.com

*Proposed Co-Counsel to the Debtor*
*and Debtor in Possession*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## **Certificate of Service**

I certify that on April 28, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh