**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF
TEXAS HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HONX, INC.,[1] | ) Case No. 22-90035 (MI) |
| | ) |
| Debtor. | ) |
| | ) **Re: ECF Nos. 68, 343, 458** |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HONX, INC.'S
(I) OBJECTION TO DEBTOR'S RENEWED MOTION FOR ENTRY OF AN
ORDER AUTHORIZING ESTIMATION OF DEBTOR'S AGGREGATE
LIABILITY FOR CURRENT AND FUTURE ASBESTOS CLAIMS AND
ESTABLISHING A SCHEDULE FOR ESTIMATION PROCEEDING AND
(II) CROSS-MOTION TO LIFT STAY TO PERMIT UP TO FOUR
BELLWETHER TRIALS IN THE VIRGIN ISLANDS AND AMEND
<u>ESTIMATION SCHEDULE</u>**

---

**If you object to the relief requested in the Cross-Motion, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.texas.uscourts.gov/ within twenty-one days from the date this Cross-Motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this Cross-Motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is HONX, Inc. (2163). The location of the Debtor's service address in this chapter 11 case is: 1501 McKinney Street, Houston, Texas, 77010.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION ..................................................................................................................... 4

RELEVANT BACKGROUND ................................................................................................. 4

OBJECTION TO ESTIMATION ............................................................................................. 7

     I.     Estimation May Not Be Used To Limit Amounts To Be Paid on Tort Claims ................................................................................................................................ 7

     II.    The Proposed Estimation Process Is Neither Mandated Nor Warranted in this Case And Will Not Advance the Parties Towards a Confirmable Plan ........ 10

CROSS-MOTION FOR BELLWETHER TRIALS IN THE EVENT THE COURT DETERMINES ESTIMATION PROCEDURES SHOULD OCCUR ......................................... 15

     A.     "*Cause*" Exists for Relief from the Automatic Stay ................................. 16

          1.    *Two Bellwether Cases Are Ready to Proceed to Trial and Two Additional Bellwether Cases Answering the Debtor's Identified Issues Will Be Ready Expeditiously (Curtis Factor 11)* ............................................................................................... 17

          2.    *The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation Militate in Favor of Bellwether Trials (Curtis Factor 10)* ............................................ 18

          3.    *Bellwether Trials Will Not Prejudice the Interests of Other Creditors (Curtis Factor 7)* .......................................................... 20

          4.    *Bellwether Trials Will Assist, Not Interfere with, the Bankruptcy Case (Curtis Factor 2)* ................................................ 20

          5.    *The Balance of Harms Weighs in Favor of Allowing Bellwether Trials to Proceed (Curtis Factor 12)* ......................... 21

     B.     The Estimation Schedule Should Be Modified To Accommodate Bellwether Trials ......................................................................................... 22

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Covert v. McGuirt (In re McGuirt)*,
  61 B.R. 974 (Bankr. S.D. Tex. 1986) ...................................................................20

*Falk v. Falk (In re Falk)*,
  No. NC-12-1385-DJuPa, 2013 WL 5405564 (9th Cir. BAP Sept. 26, 2013).........................15

*In re 1776 Am. Props. IV, LLC*,
  No. 17-30422, 2017 WL 1956851 (Bankr. S.D. Tex. May 10, 2017) ....................................22

*In re Apex Oil Co.*,
  107 B.R. 189 (Bankr. E.D. Mo. 1989) ...................................................................20

*In re Armstrong & Guy Law Office, LLC*,
  No. 07-02459-EE, 2007 WL 4571152 (Bankr. S.D. Miss. Dec. 21, 2007) ...........................20

*In re Bicoastal Corp.*,
  122 B.R. 771 (Bankr. M.D. Fla. 1990) ..................................................................15

*In re Curtis*,
  40 B.R. 795 (Bankr. D. Utah 1984) .....................................................................17

*In re Dow Corning Corp.*,
  211 B.R. 545 (Bankr. E.D. Mich. 1997) ...............................................................9, 10, 12, 14

*In re Garlock Sealing Techs., LLC*,
  504 B.R. 71 (Bankr. W.D.N.C. 2014)...................................................................12

*In re LeBlanc*,
  No. 20-11412, 2020 WL 6588413 (Bankr. E.D. La. Nov. 10, 2020) ....................................20

*In re MCorp. Fin., Inc.*,
  137 B.R. 219 (Bankr. S.D. Tex. 1992) ..................................................................9

*In re N. Am. Health Care, Inc.*,
  544 B.R. 684 (Bankr. C.D. Cal. 2016)...............................................................15, 19

*In re Patel*,
  No. 10-34767-H3-7, 2010 WL 3239128 (Bankr. S.D. Tex. Aug. 16, 2010).........................20

*In re Raza Services, LLC*,
  No. 16-30113-H3-11, 2016 WL 2354895 (Bankr. S.D. Tex. May 2, 2016) ..........................17

*In re RNI Wind Down Corp.*,
  369 B.R. 174 (Bankr. D. Del. 2007) ....................................................................10

*In re Roman Catholic Archbishop of Portland in Or.*,
    339 B.R. 215 (Bankr. D. Or. 2006) ........................................................................8, 19, 21

*In re Statewide Realty Co.*,
    159 B.R. 719 (Bankr. D.N.J. 1993) ......................................................................................10

*In re U.S. Brass Corp.*,
    176 B.R. 11 (Bankr. E.D. Tex. 1994) ............................................................................17, 20

*In re VidAngel, Inc.*,
    593 B.R. 340 (Bankr. D. Utah 2018) ...................................................................................20

*In re Xenon Anesthesia of Texas, PLLC*,
    510 B.R. 106 (S.D. Tex. 2014) ......................................................................................16, 17

*Swift v. Bellucci (In re Bellucci)*,
    119 B.R. 763 (Bankr. E.D. Cal. 1990) ................................................................................14

**Statutes**

11 U.S.C. § 362(g) .............................................................................................................................17

11 U.S.C. § 502(c) ...............................................................................................................................9

11 U.S.C. § 524(g) .............................................................................................................................13

11 U.S.C. § 1102 ...............................................................................................................................21

28 U.S.C. § 157 ...............................................................................................................................4, 7

28 U.S.C. 1334 ................................................................................................................................4, 7

U.S.V.I. Code § 31(b) ..........................................................................................................................5

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of HONX, Inc., as debtor and debtor in possession (the "<u>Debtor</u>"), by and through its undersigned counsel, hereby submits this (I) objection (the "<u>Objection</u>") to the *Debtor's Renewed Motion for Entry of an Order Authorizing Estimation of Debtor's Aggregate Liability for Current and Future Asbestos Claims and Establishing a Schedule for Estimation Proceeding* [ECF No. 343] (the "<u>Estimation Motion</u>"),[1] and (II) to the extent that the Court determines that some estimation proceedings should occur, cross-motion (the "<u>Bellwether Motion</u>")[2] to lift the stay to permit up to four cases pending in the Superior Court of the United States Virgin Islands ("<u>USVI</u>") to proceed as bellwether trials, and to adjust the estimation schedule set forth in the *Order Establishing Schedule for Estimation Proceeding* [ECF No. 458] (the "<u>Scheduling Order</u>") to accommodate such trials.  In support of this Objection and Bellwether Motion, the Committee respectfully states as follows.

## <u>PRELIMINARY STATEMENT</u>

1.      By its Estimation Motion, the Debtor asks this Court to order the parties to engage in fact and expert discovery and to conduct a trial estimating the Debtor's liability on account of its existing and future toxic tort liabilities (the "<u>Asbestos Claims</u>").  The Debtor's request should be denied.  Under the facts and circumstances of this case, the procedures that the Debtor requests will introduce expense and delay, but will not provide any information that is suited to move the parties towards a confirmable plan of reorganization.  If, however, the Court determines that

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Estimation Motion.  For the avoidance of doubt, the Committee also objects to the *Debtor's Motion for Entry of an Order Authorizing Estimation of Debtor's Aggregate Liability for Current and Future Asbestos Claims and Establishing a Schedule for Estimation Proceeding* [ECF No. 68].

[2] The relief sought by the Estimation Motion and the Bellwether Motion is intertwined, and the Committee thus believes that it would be appropriate for the two motions to be heard together.  Moreover, and for the avoidance of doubt, notwithstanding that the relief sought in the Bellwether Motion includes ancillary relief from the automatic stay, the Committee waives any application of Bankruptcy Code section 362(e) that would result in automatic termination of such stay.

estimation should proceed, the Committee respectfully submits that in order for there to be any possibility that such procedures might lead towards a resolution, they must incorporate the outcomes from a discrete number of bellwether trials in the USVI.

2.      Estimation is neither mandatory nor warranted in this case.  The Debtor has not identified any claim that needs to be fixed or liquidated to avoid delaying administration of the case unduly—and, indeed, there is none.  Nor is the estimation trial requested by the Debtor likely to yield any results that will move this case forward for several reasons.  After such trial, the Debtor's ultimate parent, Hess Corporation ("Hess"), may simply walk away and decline to fund any plan it does not prefer.  Similarly, such proceedings will not realistically convince a critical mass of claimants (let alone the supermajority required for the 524(g) plan the Debtor desires) to vote in favor of a plan offering less value than that established by the Debtor and Hess's own recent settlement history on similar claims.  The Debtor also cannot use any estimation proceedings to impose a cap on distributions on the Asbestos Claims, as bankruptcy courts do not have jurisdiction to estimate personal injury tort claims for purposes of distribution.  Finally, the Debtor cannot use estimation to limit the direct liability of Hess, a non-debtor.  As such, the Debtor's requested estimation procedures may very well lead the parties down a path involving more than 10 months of full-blown litigation, but ultimately leave the parties in the same posture in which they find themselves today, with little or no change in either side's assessment of the case.  The Committee is concerned that such an undertaking, without a greater prospect of success, is a waste of time and resources.

3.      If, however, the Court is inclined to proceed with estimation, the Committee submits that USVI bellwether trials should be included.  Hence, and solely to the extent its objection to estimation is overruled, the Committee cross-moves to lift the automatic stay in order

to permit up to four claimants to proceed to a jury trial on their Asbestos Claims against the Debtor and Hess in the Superior Court of the USVI.

4.      It is only through such bellwether trials that the estimation process the Debtor desires has any prospect of leading to a viable and confirmable plan.  The Debtor has made clear that it intends to propose a plan that includes a release for Hess under Bankruptcy Code section 524(g),[3] which requires support from at least 75% of claimants in each affected class.  Thus, any estimation proceedings (if the Court requires such proceedings to occur), should be designed to provide new information that might persuade a supermajority of claimants that any plan adequately compensates the claims they sought to bring to a jury in the USVI for harms arising in the USVI. This goal is particularly important considering that an asbestos case against Hess and the Debtor has never proceeded to a jury in the USVI as they have opted to settle more than 1,100 cases rather than allow a single one to proceed to verdict.  Only a determination of how a jury would determine these cases in the USVI can provide a concrete and persuasive answer to the most important question for any potential settlement in this case: what is the likely exposure of Hess in a trial in the USVI?

5.      Finally, the Committee submits that such bellwether trials may proceed expeditiously and, with the benefit of a recently enacted USVI law ensuring speedy trials on relevant claims, avoid undue delay—indeed, one case was only days away from trial and another case was close to trial-ready when the Debtor commenced this bankruptcy case and invoked the automatic stay.  As such, the Committee also cross-moves to modify the Scheduling Order to

---

[3] *See, e.g.*, *Debtor's Motion for Entry of an Order (I) Extending the Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof and (II) Granting Related Relief* [ECF No. 268] ¶ 2 ("The Debtor's primary goal in this chapter 11 case is to confirm a plan of reorganization pursuant to sections 524(g) and 1129 of the Bankruptcy Code . . . .").

include the bellwether trials.  The modifications sought extend the start of the estimation trial by less than one month.

## JURISDICTION

6.      This Court has jurisdiction to determine the Cross Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference to Bankruptcy Judges (District Court General Order 2012-6).

## RELEVANT BACKGROUND

7.      On April 28, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") with the Bankruptcy Court for the Southern District of Texas.  The Debtor is authorized to continue as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in this case.

8.      On May 13, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed seven of the Debtor's unsecured creditors to serve as members of the Committee [ECF No. 91].  The Committee currently comprises the following members: (i) Jeanne David, (ii) Annette Beneville, on behalf of the estate of Bruce Torgerson, (iii) Dillon Inglis, (iv) James McNamara, (v) Glaston Quashie, as Personal Representative of Arnold Anthony, (vi) Hollis Prime, and (vii) Lyne James.

9.      The Committee members' claims, and those of almost the entire claimant body in this case, arise from asbestos-related diseases contracted as a result of interactions with the Debtor, Hess, and a refinery (the "Refinery") previously owned and operated (and later partially owned and operated in a joint venture) by Hess on St. Croix in the USVI.  The operation of the Refinery has given rise to significant liabilities for the Debtor and for Hess, including, as relevant for

4

purposes of this case, claims relating to asbestos exposure by those who were employed by or at the Refinery, or who were otherwise exposed to the asbestos used at the Refinery. The Debtor and Hess now face approximately 900 claimants with Asbestos Claims.

10.     Prior to the Petition Date, Hess and the Debtor settled more than 1,100 claims related to exposure to asbestos at the Refinery. Hess and the Debtor have never let a case proceed to final determination on the merits before a judge or jury.[4]

11.     In 2021, the USVI enacted a change in the law such that plaintiffs over the age of 70 (or over the age of 65 with certain health concerns) are now entitled to move to "fast-track" their litigation and compel a trial within 180 days of their motion. *See* U.S.V.I. Code § 31(b) (the "Virgin Islands Preference Statute"). Many asbestos claimants qualify for this "preference" and would be entitled to force Hess to litigate on an expedited timeframe.

12.     HONX filed for bankruptcy less than one week before Hess's first asbestos-related trial was set to begin, in *Mohansingh v. Hess Oil Virgin Islands Corp. et al.*, No. SX-2006-CV-00231 (V.I. Super. Ct.) (the "Mohansingh Trial"). The plaintiff in the Mohansingh Trial, Kadar Mohansingh, worked at the Refinery from 1970-1981 and 1988-2009, and he filed his complaint against Hess and the Debtor in 2006—sixteen years ago—alleging he was injured through exposure to asbestos "and asbestos containing products" while working at the Refinery. Hess and the Debtor filed for summary judgment, which the court denied,[5] the question of the Debtor and Hess's liability was set for adjudication, and both sides were trial-ready when the petition was filed.

---

[4] *See Declaration of Todd R. Snyder, Chief Administrative Officer of HONX, Inc., in Support of Chapter 11 Petition and First Day Motions* [ECF No. 8] (the "First Day Declaration") ¶ 27.

[5] First Day Decl. ¶ 32.

13.     In addition, discovery was complete and the parties were near trial ready in *Quashie ex rel. Anthony v. Hess Oil Virgin Islands Corp*., No. SX-04-CV-607 (V.I. Super. Ct.) (the "Anthony Trial"), another case involving Asbestos Claims against the Debtor and Hess arising out of the Refinery.  Arnold Anthony worked at the Refinery from approximately 1965-1980 and 1987-1999 as a sandblaster and painter.  After Mr. Anthony's diagnosis of asbestosis and silicosis, Mr. Anthony filed his complaint in 2004—eighteen years ago—alleging that he was routinely exposed to asbestos while working at the Refinery.  After Mr. Anthony's death on May 21, 2020, the court permitted Mr. Anthony's grandson, Glaston Quashie, to continue the suit as the personal representative for Mr. Anthony's estate.[6]  The parties were preparing for dispositive motions, *Daubert* motions, and motions *in limine* to be filed just a few weeks hence when the Debtor filed, and the plaintiff is prepared to re-commence the Anthony Trial as soon as the court places it on the calendar.[7]

14.     Hess is a multi-billion dollar company that can afford to pay whatever liability would result from the Asbestos Claims outside of bankruptcy, whether settled or litigated to judgment.[8]  The Debtor has no business and no assets, aside from any rights it has under a funding agreement that it entered into with Hess prior to the Petition Date (the "Funding Agreement") and any claims or causes of action it may have against Hess.[9]  The Funding Agreement obligates Hess to fund an asbestos claims trust only up to $10 million plus the costs of this Chapter 11 Case and

---

[6] Mr. Quashie serves on the Committee.  *See* Verified Statement of the Official Committee of Unsecured Creditors of Honx, Inc. Pursuant to Bankruptcy Rule 2019 [ECF No. 150].

[7] *Quashie ex rel. Anthony v. Hess Oil Virgin Islands Corp*., Fourth Stipulation to Amend the Scheduling Order, No. SX-04-CV-607 (V.I. Super. Ct. Mar. 27, 2022).

[8] Hess's 10-Q reports in 2022 acknowledge the pendency of this Chapter 11 Case and state Hess's "belie[f] that the resolution of these proceedings will not have a material adverse effect on our consolidated financial position, results of operations or cash flows."  Form 10-Q for quarter ended June 30, 2022 at 12; Form 10-Q for quarter ended March 31, 2022 at 11; Form 10-Q for quarter ended September 30, 2022.

[9] *See* First Day Decl. ¶ 23.

the Debtor's ordinary course expenses.[10]  The Funding Agreement gives Hess control over the Debtor in this Chapter 11 Case, including the ability to cease providing funding to the extent the Debtor files a plan which does not contain a release for Hess.  The Debtor filed the Estimation Motion in furtherance of (and as expressly required by)[11] the Funding Agreement.

15.     On November 7, 2022, after a hearing, the Court entered an order to govern the schedule for estimation proceedings in the event that the Court determines that estimation should proceed.  The Scheduling Order includes provisions for briefing and argument on *whether* estimation should occur, and expressly reserves the right of any party to file a motion to seek alternative estimation proceedings.[12]

16.     On November 15, 2022, pursuant to the Scheduling Order, the Debtor filed its statement of issues to be addressed at estimation (the "Debtor's Estimation Issues").[13]

## OBJECTION TO ESTIMATION

### I.  Estimation May Not Be Used To Limit Amounts To Be Paid on Tort Claims

17.     The authority to estimate contingent or unliquidated claims remains subject to the general jurisdictional limits of bankruptcy courts.  Specifically, while bankruptcy courts have core jurisdiction to estimate claims for purposes of confirming a chapter 11 plan, *they may not* exercise jurisdiction over "the liquidation or estimation of contingent or unliquidated personal injury tort

---

[10] *See* First Day Decl. ¶¶ 35–36.  The Funding Agreement is attached as Exhibit A to the First Day Declaration.

[11] *See* Funding Agreement § 2(e)(v) (including the filing of the Estimation Motion within 75 days of the Petition Date as a Funding Agreement milestone).

[12] *See* Scheduling Order ¶ 3 & n.3.  The Committee has also filed a motion to dismiss or convert the Debtor's case, which is pending before this Court for decision.  *See Motion of the Official Committee of Unsecured Creditors of Honx, Inc. to Dismiss or Convert the Chapter 11 Case* [ECF No. 324].

[13] *Debtor's Statement of Issues To Be Addressed at Estimation* [ECF No. 482].

or wrongful death claims against the estate *for purposes of distribution*."[14]  Only district courts or state courts have the authority to liquidate or estimate such claims for purposes of distribution.[15]

18.      Courts have found that estimation must be denied where the proposed estimation procedures would cause a bankruptcy court to estimate personal injury tort claims in a way that would, in effect, limit amounts to be distributed, even if the party seeking estimation asserts that it seeks estimation for purposes other than for distribution.  For instance, in *Roman Catholic Archbishop of Portland*, the debtor sought an estimation of sex abuse tort claims purportedly "'for temporary allowance for purposes of voting and confirmation' of debtor's chapter 11 plan."[16]  The bankruptcy court reviewed the circumstances, however, and found that the procedures would have an impermissible impact on distributions, notwithstanding the debtor's stated purpose to the contrary.  The proposed plan in that case provided for the formation of a corporation to act as a "claims resolution facility" or "CRF" that would be funded by the debtor "with an amount sufficient to pay in full the amount of the unresolved present tort claims, as estimated by this court."[17]  The plan did not, however, provide for any additional payment into the CRF if the court's estimate turned out to be too low after claims were liquidated through arbitration or trial.  As a result, if the estimate of the value of the claims turned out to be too low, liquidated claims would not be paid in full, and the court found that, in effect, the "debtor propose[d] to use the claim estimation process to create a limited fund" for payment on tort claims.[18]  The court therefore determined that the "debtor's proposed plan provides that the estimation will provide a cap on the

---

[14] 28 U.S.C. § 157(b)(2)(B) (emphasis added).

[15] 28 U.S.C. § 157(b)(5) (district court where the bankruptcy case is pending "shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose."); 28 U.S.C. § 1334(c)(1) (permitting the district court to "abstain[ ] from hearing a particular proceeding").

[16] *In re Roman Catholic Archbishop of Portland in Or.*, 339 B.R. 215, 219 (Bankr. D. Or. 2006).

[17] *Id.* at 219.

[18] *Id.* at 220.

amount of money that will be made available to pay the tort claims," which "***effectively limits the*** ***amount that will be distributed, thereby causing the estimation of the claims to be for*** ***distribution purposes, not merely for voting and confirmation purposes***."[19]  Other courts have reached a similar conclusion where estimation procedures would, in effect, establish a cap on personal injury tort claims.[20]

19.     Here, the Debtor has not yet proposed a plan, and so how it will use any outcome from estimation is yet to be seen.  But, the Debtor's Estimation Issues make clear that its present purpose in seeking estimation is to "determine the allowed claim amounts" for Asbestos Claims and seek downward "adjustments."[21]  The Asbestos Claims, however, are personal injury tort claims and thus estimation cannot be used to liquidate such claims, cannot serve as an actual determination on liability, and cannot be used to impose a *de facto* cap on claimant recoveries. Moreover, as discussed *infra*, the estimation procedures the Debtor requests are not required to determine any questions of plan feasibility or voting and are not even suited to assist the parties in negotiating a resolution that might be incorporated into a plan or result in a plan that would garner sufficient creditor support given the Debtor's stated intention to seek a plan that incorporates a section 524(g) trust.  It is thus hard to see what proper purpose estimation could serve in this case.

---

[19] *Id.* at 220–21 (emphasis added).

[20] *See, e.g.*, *In re Dow Corning Corp.*, 211 B.R. at 566–67, 569 (in proceeding where the debtor proposed to deposit into a trust a certain amount for payment of pending personal injury claims and sought estimation of the claims to establish the feasibility of the plan, the court denied debtor's request for an estimation proceeding, observing that debtor's request was really for "estimation of the aggregate value of tort claims . . . to limit the amount it will ultimately have to pay on account of tort liability," and that "allowing a bankruptcy judge to estimate the aggregate value of all claims for the apparently benign reason of determining feasibility of a plan of reorganization . . . can create the result that the estimation was actually for purposes of distribution as well"); *cf. In re MCorp. Fin., Inc.*, 137 B.R. 219, 225–26 (Bankr. S.D. Tex. 1992) (denying confirmation of chapter 11 plan that proposed a cap on all contested claims on a certain date, with estimates on such claims subject to downward revision only, since plan effectively deprived claimants of right to reconsideration of estimated claims, and observing that "[t]he estimation process may fulfill the allowance requirements for purposes of § 1129(a)(9), but will not set the outer limits of a claimants' right to recover").

[21] Debtor's Estimation Issues at 1.

## II.  The Proposed Estimation Process Is Neither Mandated Nor Warranted in this Case And Will Not Advance the Parties Towards a Confirmable Plan

20.     Estimation only is mandatory under Bankruptcy Code section 502(c) where it will avoid undue delay that would otherwise result from fixing or liquidating claims.[22]  It is intended "to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim.  It is not a mechanism for reducing the amount of a debtor's liability."[23]   To determine whether estimation is appropriate, a court should "consider[] [and balance] the time, costs and benefits" associated with estimation.[24]   In this analysis, "a bankruptcy court must consider the rights of all parties in interest, not just those of the debtor."[25]  When "there is no reason to believe that estimation would result in a faster distribution of proceeds to tort claimants in the event that the Debtor is found liable[,]" estimation is unwarranted.[26]

21.     Here, estimation is not mandated because this case does not depend on the liquidation or fixing of any claim prior to confirmation of any plan—indeed, the Debtor has stated that it intends to seek a plan with a section 524(g) trust, which will administer all claims.  In addition, the estimation requested by the Debtor would create—rather than prevent—undue delay.[27]  The Scheduling Order provides that if the Court orders estimation, the parties will spend

---

[22] 11 U.S.C. § 502(c) ("There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case").

[23] *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007).

[24] *See In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997).

[25] *Id.* at 566.

[26] *Id.* at 565.

[27] *See, e.g., In re Dow Corning Corp.*, 211 B.R. at 567 ("[U]nder the Debtor's plan pre-confirmation claims estimation is simply unnecessary."); *In re Statewide Realty Co.*, 159 B.R. 719, 725 (Bankr. D.N.J. 1993) (declining to estimate claim where plan confirmation was not dependent on resolution of claims and the proposed distribution to unsecured creditors under the plan would not be altered as a result of the allowance or disallowance of the claim).

the next 10 months, at least, and substantial resources, actively engaged in litigating the Debtor's estimation trial—likely without leading the parties closer to resolution.

22.     The estimation requested by the Debtor is also not warranted because it fails to present a real path forward for the Debtor and Hess.  The estimation proceedings the Debtor requests will not bring the parties closer to settlement by educating them further about the value of the pending claims.  This is because Hess and the Debtor have already settled more than 1,100 similar claims, Hess and the Debtor face a limited claimant pool of only approximately 900 claimants, counsel to claimants has litigated with Hess and the Debtor extensively and is already aware of their position, and at least 99% (if not all) of the creditors in this case are aware of Hess's settlement history and the value such history implies for their claims.  The information that Hess and the Debtor seek to try in the estimation trial—as described in the Debtor's Estimation Issues— will not educate the claimants on new issues in a way that can move the parties closer in negotiations.

23.     Moreover, the real intended beneficiary of this case is the Debtor's ultimate non-debtor parent, Hess, which is also independently subject to direct claims arising out of the Refinery. Because Hess is not a debtor, the claims against Hess cannot be estimated in this Court.  Moreover, the claimants are aware that Hess has assets more than sufficient to satisfy the Asbestos Claims.

24.     The Debtor and Hess may ***hope*** that estimation proceedings will somehow compel the claimants to accept an offer from Hess that provides less value than was provided by Hess to other asbestos claimants in recent settlements.  But that is not possible with a section 524(g) plan that requires a supermajority of creditor consent.  Nor is it a proper use of estimation to seek to outmaneuver, outlast, or exhaust claimants as a litigation tactic.  Here, the claimants are unlikely to be persuaded by a low estimate of Asbestos Claims in bankruptcy proceedings, when they know

11

how the Debtor and Hess have actually compensated such claims in the past, and estimation proceedings will not convince claimants to accept an offer short of what they consider fair based on Hess's own history of settlements in the USVI.[28]   As previous courts have recognized, especially where the parties lack any history of actual jury verdicts, estimation is unlikely to be persuasive because "no matter what answer [a] Court were to give as its estimate of the value of all tort claims, there is almost no likelihood that the estimate would prove accurate," and "parties in interest will derive no comfort from the results of a lengthy and complex estimation war."[29]  The Debtor's proposed estimation procedures are deficient because they do not propose to supply the missing information concerning actual jury verdicts.

25.   The history of the debtor's estimation trial in *Garlock*, another asbestos case, illustrates this point and demonstrates the futility of engaging in the Debtor's estimation trial in an attempt to force creditors to accept a section 524(g) plan that they believe undervalues their claims. There, Garlock faced liability for asbestos claims and filed a chapter 11 petition in June 2010.  The *Garlock* court determined to estimate the aggregate amount of Garlock's asbestos liability and, in January 2014, close to three and a half years into the bankruptcy case, entered an order that adopted the debtor's proposed estimation of $125 million.[30]   Nevertheless, this did not result in a confirmable plan.  It took another three years for the debtor to achieve a confirmable plan, which included a section 524(g) trust funded with $480 million—many times the estimated amount.[31]

---

[28] Plaintiffs and their counsel believe that this recent settlement history reflects Hess's own assessment of the risks posed to Hess based on claims asserted against it in the tort system in the USVI, and it would be irrational for them to accept less based on bankruptcy court estimation proceedings.

[29] *In re Dow Corning Corp.*, 211 B.R. at 567.

[30] *In re Garlock Sealing Techs., LLC*, 504 B.R. 71, 74, 97 (Bankr. W.D.N.C. 2014).

[31] *See* Order (A) Recommending Confirmation of the Modified Joint Plan of Reorganization of Garlock Sealing Technologies LLC, et al., and OldCo, LLC, Successor by Merger to Coltec Industries Inc., (B) Issuing Proposed Findings of Fact and Conclusions of Law Supporting Confirmation of the Joint Plan, and (C) Recommending Granting of Motions to Approve Certain Settlements, *In re Garlock Sealing Technologies LLC, et al.*, No. 10-BK-31607 (Bankr. W.D.N.C. May 24, 2017) [ECF No. 5972]; Disclosure Statement for Modified Joint Plan of Reorganization of Garlock

26.     The Debtor's Estimation Motion elides these dynamics and simply asserts—without support—that estimation is a "fundamental step to resolving the Asbestos Claims and, accordingly, the chapter 11 case" and promises that the process will provide the parties "with an opportunity for a critical evaluation of the merits of the claims at issue, hopefully paving the way for a resolution of disputes and, ultimately, confirmation of a chapter 11 plan."[32]  But the realities of this case make clear that an estimation process is not needed to formulate, negotiate or effectuate a chapter 11 plan, and, further, that such a process—particularly of the sort the Debtor contemplates—is likely only to delay the ultimate resolution of this Chapter 11 Case.

27.     *First,* there is no need to engage in estimation proceedings to satisfy requirements to confirm a plan incorporating a section 524(g) trust.  The Debtor has made clear that it is seeking such a plan to enable Hess to channel its asbestos liabilities and obtain a release.[33]  Absent such a construct, Hess, the true intended beneficiary of this Chapter 11 Case, cannot receive the release it seeks.  But, while creditor consensus *is* a necessary component of achieving a confirmable section 524(g) plan,[34] an estimation of aggregate liability is not needed for the Court to confirm such a plan.  Indeed, it is antithetical to the entire purpose of such plan, which will create a trust that will actually liquidate such claims.

28.     *Second*, there is no point in conducting estimation to determine availability of funding from sources other than Hess.  The Debtor has represented that it has exhausted all

---

Sealing Technologies LLC, et al. and OldCo, LLC, Proposed Successor by Merger to Coltec Industries Inc., *In re Garlock Sealing Technologies LLC, et al.*, No. 10-BK-31607 (Bankr. W.D.N.C. July 29, 2016) [ECF No. 5444] at iii.

[32] Estimation Motion ¶ 3.

[33] *See* First Day Decl. ¶ 37.

[34] As the Debtor is certainly aware, any such plan must be accepted by 75% of the claimants in each class.  11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) (including the following requirement for confirmation of a section 524(g) plan:  "a separate class or classes of the claimants whose claims are to be addressed by a trust described in clause (i) is established and votes, by at least 75 percent of those voting, in favor of the plan").  The Debtor's claim that estimation will permit it to "utilize a key tool of section 524(g) of the Bankruptcy Code in the event the parties are unable to reach a settlement" is baffling given the 75% threshold that would be required before that tool could come into play.  *See* First Day Decl ¶ 45j.

insurance and there is no ongoing business that will be contributed to a trust.  The Funding Agreement likewise contains no real obligation by Hess to fund a trust with sufficient funds to satisfy the Debtor's liabilities.[35]  As such, there is no estimate of aggregate asbestos liabilities that could compel Hess to fund, and thereby render practicable, any plan.  Under these circumstances, estimation cannot render funding available to the Debtor.

29.     *Third*, there is no need to conduct estimation for purposes of plan feasibility.  Given the Debtor's stated intention to propose a plan with a section 524(g) trust, the question will be whether Hess is obligated to fund recoveries under such a plan (which it currently is not).  Any such plan will rely for funding on the solvency and commitment of Hess to make good on whatever payments the plan contemplates.  Here, Hess's solvency is not in question, and no party has suggested that Hess might have difficulty satisfying the Asbestos Claims.[36]  Estimation under such circumstances is not an alternative to the liquidation or fixing of claims, but just an additional step that introduces delay and achieves nothing.

30.     *Fourth*, as noted, estimation will not provide claimants with any additional or helpful information, such that it would inform their votes on any potential plan and would be required to be included in a disclosure statement.

31.     Finally, the Bankruptcy Code does not permit any estimation proceeding to opine on a key question in this case—what is the value of the claimants' claims ***against Hess***.  Hess is

---

[35] The Funding Agreement creates only contingent obligations, providing Hess with an effective veto over any occurrence in the Chapter 11 Case that it deems unfavorable.  *See* Funding Agreement §§ 2(e) (milestones), 5(d) (budget).  Any funding is contingent in all respects on the Debtor filing a plan "acceptable to [Hess]."  *See id.* § 2(e)(vii).

[36] To the extent the Court is concerned about Hess's ability to fund the trust, rather than estimating claims, the best evidence is to look at the total value of Hess's business.  *See Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 778 (Bankr. E.D. Cal. 1990) ("The uncertain status of Swift's claim is not an impediment to Bellucci's ability to prepare and file a plan.  After all, Bellucci contends that assets are ample to fund a 'full payment' plan even if Swift's judgment survives appeal . . .  Thus, the debtor's invocation of section 502(c)(1) is contradicted by his own theory of the case."); *cf. In re Dow Corning Corp.*, 211 B.R. at 568–69 ("[N]o matter how large the actual aggregate tort liability may turn out to be, the Reorganized Debtor would clearly be able to perform the pertinent terms of the plan.").

not a debtor, and the Bankruptcy Code makes clear that it is only claims against a debtor that may be subject to estimation.  Nor can the outcome of any estimation proceeding be utilized in any other forum except to the extent that it is part of a confirmed chapter 11 plan.[37]  Estimation does not constitute a final determination as to liability.[38]  Even under a section 524(g) plan—where claims are channeled to a trust—it is that future trust, free of any estimate by the bankruptcy court, that determines the allowed amount of any claim.  Assuming there is no confirmed plan, neither the Debtor nor Hess will be able to take an estimation ruling and apply it with preclusive effect in any future litigation in the USVI courts or elsewhere.  Those courts, and juries, will make their own, independent, determinations as to Hess's liability.

32.    For each of the foregoing reasons, the Committee respectfully submits that the Debtor's Estimation Motion is neither mandatory nor warranted and should be denied.

## CROSS-MOTION FOR BELLWETHER TRIALS IN THE EVENT THE COURT DETERMINES ESTIMATION PROCEDURES SHOULD OCCUR

33.    In the event that the Court determines that some estimation process should proceed, the Committee cross-moves to lift the automatic stay to permit the parties to bring up to four cases pending in the Superior Court of the USVI to trial in connection with such estimation proceedings.

34.    As noted, estimation is not mandatory in this case and, given the Debtor's stated intention to seek a section 524(g) plan funded by Hess, estimation is not required for consideration of plan feasibility, funding, voting, or other such typical purpose.  Nor is estimation proper as a litigation strategy to delay and exhaust claimants into accepting lower recoveries in bankruptcy.

---

[37] *See In re Bicoastal Corp.*, 122 B.R. 771, 775 (Bankr. M.D. Fla. 1990) ("There is no question that the estimation of claims in bankruptcy does not establish a binding legal determination of the ultimate validity of a claim . . . .").

[38] *See In re N. Am. Health Care, Inc.*, 544 B.R. 684, 688 (Bankr. C.D. Cal. 2016) ("Estimation is a summary procedure whereby the Court estimates the value of a claim. . . .  Such an estimate necessarily implies no certainty and is not a finding or fixing of an exact amount; it is merely the court's best estimate for the purposes of permitting the case to go forward.") (citing *Falk v. Falk (In re Falk)*, No. NC-12-1385-DJuPa, 2013 WL 5405564, at *7 (9th Cir. BAP Sept. 26, 2013)).

35.      Under these circumstances, estimation must be designed to provide the parties (including the supermajority of creditors needed to approve a section 524(g) plan) with new information that will actually assist them in negotiating and formulating a resolution. The issues that the Debtor proposes to estimate are simply not suited for this purpose.[39] The information that the parties in this case are lacking—and that the Debtor and Hess have sought to prevent the parties from gaining—is any *actual* history of jury verdicts against the Debtor or Hess. As courts have recognized, actual jury verdicts provide persuasive information to understand the value of a claim. No amount of litigation in this Court can replace the value of a USVI jury verdict in providing clarity as to Hess's and the Debtor's true liability.

36.      As such, if estimation proceeds, it is important to allow a limited number of bellwether trials to advance, if such estimation proceedings are to have a chance of moving this case towards resolution.

### A.      "*Cause*" Exists for Relief from the Automatic Stay

37.      Bankruptcy Code section 362(d)(1) provides that a "court shall grant relief from the stay . . . for cause."[40] "The term 'cause' used in 11 U.S.C. § 362(d)(1) is not defined in the Code and whether cause exists must be determined on a case by case basis."[41] "Allowing a matter to proceed in another forum may constitute cause. The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case."[42]

38.      In determining whether to lift the automatic stay to allow litigation against a debtor to proceed in another forum, bankruptcy courts generally consider the following so-called "*Curtis*

---

[39] Debtor's Estimation Issues.
[40] 11 U.S.C. § 362(d)(1).
[41] *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (S.D. Tex. 2014) (citation omitted).
[42] *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 112 (citation omitted).

factors": (1) whether the relief will result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action; (5) whether the debtor's insurer has assumed full responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in the other forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success would result in a judicial lien avoidable by the debtor; (10) interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the proceedings have progressed to the point that parties are ready for trial; and (12) impact of the stay on the parties and the balance of harm.[43]  "These factors need not be assigned equal weight, and only those factors relevant to the particular case need to be considered."[44]  The decision to lift the stay may also be upheld on judicial economy grounds alone.[45]  The party opposing a request to lift the stay has the burden of proof on all issues other than the debtor's equity in property.[46]

    39.    Applying the *Curtis* factors to this case, shows that ample cause is present to lift the automatic stay to allow bellwether cases to proceed in the USVI.

    *1.  Two Bellwether Cases Are Ready to Proceed to Trial and Two Additional Bellwether Cases Answering the Debtor's Identified Issues Will Be Ready Expeditiously (Curtis Factor 11)*

    40.    The Committee proposes that up to four bellwether cases pending in the USVI proceed to trial. Two bellwether cases are already trial-ready, or nearly so.  The Mohansingh Trial was days from commencing when the Debtor filed its bankruptcy petition and imposed the stay,

---

[43] *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 112 (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).
[44] *In re U.S. Brass Corp*., 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994).
[45] *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 112.
[46] 11 U.S.C. § 362(g); *see also In re Raza Services, LLC*, No. 16-30113-H3-11, 2016 WL 2354895, at *2 (Bankr. S.D. Tex. May 2, 2016) (mem. op.) (finding relief should be granted to lift stay under section 362(d)(1) because debtor failed to meet its burden to oppose lifting stay).

and the Anthony Trial was similarly on the verge of completing pretrial briefing and commencing trial on the Petition Date.[47]  If the stay is lifted, the USVI Superior Court may reschedule the trials and complete them swiftly.  In addition, the Debtor's filings in this Court have singled out so-called "secondary-exposure" cases.[48]  Accordingly, the Committee suggests that each of the claimants, on the one hand, and the Debtor, on the other, choose one "secondary-exposure" case pending in the USVI Superior Court, for two additional bellwether trials.  The Committee anticipates that these two additional trials keyed to the Debtor's main questions on liability may be trial-ready in May and June of 2023.

2.  *The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation Militate in Favor of Bellwether Trials (Curtis Factor 10)*

41.      In the event that the Court determines that an estimation trial should proceed, the interests of judicial economy require the inclusion of bellwether trials.  The Debtor and Hess have never let a trial proceed to a jury in the USVI.  As noted *supra*, estimation proceedings without any bellwether trials will exhaust at least ten months and extensive resources without moving this case forward; bellwether trials, on the other hand, will provide important data concerning how a USVI jury will value the claims and may progress these cases towards resolution.  In addition, the Virgin Islands Preference Statute will ensure an expeditious resolution of the bellwether trials.[49]

42.      The court in *PG&E* recognized the importance of permitting bellwether trials under similar circumstances.  There, the bankruptcy court granted a motion to lift the stay to permit state

---

[47] *See* First Day Decl. ¶ 32 (Mohansingh Trial scheduled to begin May 2, 2022); Fourth Stipulation to Amend the Scheduling Order, *Quashie ex rel. Anthony v. Hess Oil Virgin Islands Corp.*, No. SX-04-CV-607 (V.I. Super. Ct. Mar. 27, 2022) (dispositive motions, Daubert, and motions *in limine* due in Anthony Trial on June 6, 2022).

[48] *E.g.*, Estimation Motion ¶ 7; Debtor's Estimation Issues 2 (Issues 1 & 3).

[49] *See* Memorandum Decision Regarding Motions for Relief from Stay at 3, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D. Cal. filed Aug. 16, 2019) [ECF No. 3571] [hereinafter "PG&E Decision"] (interest of judicial economy and an expeditious determination were served since plaintiffs were "entitled to statutory preference pursuant to state procedural law," and therefore "a trial in state court [wa]s likely to commence in an expeditious fashion once a preference determination has been made").

court trials to proceed, and found that granting relief from the stay would "provide an important data point that most likely will facilitate resolution of the wildfire tort claims in this case" and "relevant to the bankruptcy proceeding is the guidance it may provide in this court's estimation proceedings under 11 U.S.C. § 502(c)."[50]  Likewise, in *Roman Catholic Archbishop of Portland in Oregon*, where (like here) the parties had a history of settlements but no history of trials to value the claims, the bankruptcy court observed in connection with a request for estimation that, "Although I do not question that counsel for the tort claimants who settled those claims are highly skilled and fulfilled their ethical duty of representation for their clients, *it is important for estimation purposes to consider the value of the child sex abuse claims as determined by a jury as well as the settlement value of claims*, where the claimants have a right to jury trial. *I do not find that debtor's methodology of estimation would provide such a highly accurate indication of the value of the claims* as to make any concern about a cap on liability 'speculative.'"[51]  Other courts have also recognized the persuasive value of actual jury verdicts in estimating liability.[52]  It has also been widely recognized that the interests of judicial economy and efficiency are "best-served by liquidating claims before the court that knows the parties and the factual and legal issues and can schedule final hearings in short order."[53]

---

[50] PG&E Decision at 2.

[51] *Roman Catholic Archbishop in Or*., 339 B.R. at 220 (suggesting a "possibility would be to conduct a few advisory summary jury trials such as are used in alternative dispute resolution, to obtain some indication of how Oregon juries might evaluate these claims" but noting that it was premature to choose a method of estimation).  The district court later withdrew the reference and "decided that summary 'mini-trials,' with some claims tried to the court and some claims tried to anonymous advisory juries, would be the best and most efficient approach."  Order, *In re Roman Catholic Archbishop of Portland*, No. 04-37154-elp11 (Bankr. D. Or. filed Mar. 28, 2007) [ECF No. 4906] at 2.

[52] *See In re N. Am. Health Care, Inc.*, 544 B.R. at 689 (drawing an analogy to counting marbles in a jar and in comparing estimating an unliquidated wrongful death/personal injury claim, on the one hand, and determining the claim amount through a jury trial, on the other, noting that "even if the person who makes the estimation is skilled and experienced in estimating," "the result of the estimation is likely to be less accurate (and certainly, under no circumstances, more accurate)" than actually counting the marbles).

[53] *In re LeBlanc*, No. 20-11412, 2020 WL 6588413, at *4 (Bankr. E.D. La. Nov. 10, 2020) (citing *In re VidAngel, Inc*., 593 B.R. 340, 349 (Bankr. D. Utah 2018)) ("The pending Lawsuit has progressed nearly to completion and, therefore, as a practical matter, the Court agrees that the State Court is the better place to resolve the state law claims."); *see also* PG&E Decision at 2; *In re U.S. Brass Corp*., 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) (observing that Texas Supreme

19

43.     The USVI Superior Court is also best suited to assess the Debtor and Hess's liability.  The USVI is the forum sited where the Refinery sits, where the conduct occurred, and where the plaintiffs suffered the harm giving rise to the Asbestos Claims.  The USVI is also the forum in which the plaintiffs commenced and have prosecuted their claims, in some cases for more than a decade.  The USVI court oversaw the proceedings by which the Mohansingh Trial and Anthony Trial became ready (or nearly ready) for trial.  As such, the USVI is the best forum to address the Debtor's and Hess's liability in connection with the Refinery.[54]

### 3. *Bellwether Trials Will Not Prejudice the Interests of Other Creditors (Curtis Factor 7)*

44.     The interests of other creditors will be furthered, not harmed, by permitting bellwether trials to proceed if any estimation proceedings are ordered to occur.  The Committee is the statutory body that represents the interests of all unsecured creditors of the Debtor—and thus of all creditors in this case.[55]  As a fiduciary for the entire creditor body, the Committee requests that bellwether trials proceed for the benefit of all unsecured creditors of the Debtor.

### 4. *Bellwether Trials Will Assist, Not Interfere with, the Bankruptcy Case (Curtis Factor 2)*

45.     Under the circumstances of this case, bellwether trials would supply a crucial data point that will assist this bankruptcy case in the event that the Court determines that an estimation

---

Court was "ready to proceed with oral argument" on an issue that was central to debtor's liability and could "affect the resolution of future litigation"); *In re Apex Oil Co.*, 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989) (concluding estimation was not warranted and instead "[t]he most logical, expeditious and judicially economical method of disposing" of an action was trial in court familiar with claims where trial could proceed in a few months); *Covert v. McGuirt (In re McGuirt)*, 61 B.R. 974, 976 (Bankr. S.D. Tex. 1986) (granting relief from the stay "giving special emphasis to the fact that the state court litigation is actually on the verge of trial and can be reached shortly").

[54] *See In re Patel*, No. 10-34767-H3-7, 2010 WL 3239128, at *1 (Bankr. S.D. Tex. Aug. 16, 2010) (observing that "[t]he state court is competent to handle to conclusion the causes of action which have been raised and tried in the state court litigation" as it "has been involved in the state court litigation since its inception," and "extensive discovery was conducted"); PG&E Decision at 3 ("The state court is also suited for a proceeding which consists entirely of state law issues . . . ."); *In re LeBlanc*, No. 20-11412, 2020 WL 6588413, at *4 (Bankr. E.D. La. Nov. 10, 2020) ("Here, the Court acknowledges that the State Court has invested significant time in the parties' dispute, and that their issues are familiar to that court."); *In re Armstrong & Guy Law Office, LLC*, No. 07-02459-EE, 2007 WL 4571152, at *3 (Bankr. S.D. Miss. Dec. 21, 2007) ("The United States District Court for the Southern District of Texas is better prepared and equipped to make determinations as to Texas law than is this Court.").

[55] 11 U.S.C. § 1102.

proceeding should occur.  Prior bankruptcy courts have recognized the value that jury verdicts present in terms of assessing the value of claims and have held that bellwether trials should be conducted to evaluate claims when parties dispute liability or the amount of claims, especially where a history of jury verdicts is lacking.[56]  Significantly, Hess has not allowed even one jury to reach a verdict as to its liability on an Asbestos Claim.

46.     Given that the Debtor has sought estimation proceedings, lifting the stay to permit a limited number of bellwether trials to be incorporated into such proceedings—to the extent they occur—will only bolster the bankruptcy proceedings, provide crucial data and credibility to the already pending process, and "help[] with the imperfect method of estimating claims . . . in the bankruptcy court."[57]

### 5. *The Balance of Harms Weighs in Favor of Allowing Bellwether Trials to Proceed (Curtis Factor 12)*

47.     There is no cognizable harm posed by allowing four discrete cases—two trial ready, and two targeted to answer the Debtor's stated question about how a court should value "secondary-exposure" cases—to proceed in the USVI.  On the one hand, the jury verdicts are likely to provide the crucial missing information that will assist the Debtor's bankruptcy case to move forward if estimation proceeds.  On the other, the litigation burden is minimal, given the trial-ready status of two cases and the USVI law that will ensure speedy adjudication of the other two

---

[56] *See Roman Catholic Archbishop*, 339 B.R. at 220 (observing that where a debtor's estimation methodology was based entirely on the value of settlements, "it is important for estimation purposes to consider the value of the child sex abuse claims as determined by a jury as well as the settlement value of claims, where the claimants have a right to jury trial"); *id.* at 223 (considering allowing "a few advisory summary jury trials . . . to obtain some indication of how Oregon juries might evaluate these claims"); PG&E Decision (granting motions for relief from the automatic stay to conduct bellwether trials in state court to determine whether debtors caused and were liable for a particular wildfire, noting that "relief from stay will definitively bring a resolution as to Debtors' liability in the Tubbs fire, and provide an important data point that most likely will facilitate resolution of the wildfire tort claims in this case").

[57] *See* PG&E Decision at 4; *id.* ("[C]ommencement of this litigation, while connected to the bankruptcy, will not interfere with the bankruptcy case.  The state court trial may proceed on a parallel track to the proceedings in this court.").

bellwether trials if the parties pick claimants entitled to invoke such law. Given the Debtor's request for estimation proceedings to occur, permitting up to four bellwether trials to proceed concurrently is necessary to achieve any meaningful progress in this Chapter 11 Case.[58]

**B.    The Estimation Schedule Should Be Modified To Accommodate Bellwether Trials**

48.    In the event that the Court determines that some estimation proceedings should occur, the Committee cross moves to adjust the Scheduling Order to accommodate the bellwether trials as set forth in the chart below. Notably, the inclusion of bellwether trials extends the start of the estimation trial by less than one month.

| Event | Date |
|---|---|
| Deadline for Debtor to submit statement of issues to be addressed at estimation | November 15, 2022 |
| Deadline for the Debtor to provide initial disclosures | November 15, 2022 |
| Deadline to file any objections to whether estimation should occur[59] | November 18, 2022 |
| Beginning of fact discovery, including but not limited to FRCP 30 (depositions), FRCP 33 (interrogatories), FRCP 34 (requests for documents and information), FRCP 35 (medical examinations) and FRCP 36 (requests for admissions) | December 1, 2022; *provided*, that fact discovery sought pursuant to the estimation scheduling motion will be on hold until a Court ruling on the UCC motion to dismiss the chapter 11 case; provided, further, that FRCP 35 discovery (medical examinations) will be on hold until a Court ruling on whether estimation should occur. |
| Deadline to file responses to objections to whether estimation should occur | December 5, 2022 |
| Deadline to file objections to Bellwether Motion and Scheduling Motion | December 9, 2022 |

[58] *See In re 1776 Am. Props. IV, LLC*, No. 17-30422, 2017 WL 1956851, at *2 (Bankr. S.D. Tex. May 10, 2017) ("There is no showing of a substantial harm to the interests of either the Debtors or Blavesco through allowing the litigation to proceed in state court. The Court concludes that the stay should be lifted for cause.").

[59] The right of any party to file a motion seeking any alternative estimation proceedings, or any other related relief, is expressly reserved, along with all parties' rights to object thereto on any basis.

| Hearing on whether estimation should occur, Bellwether Motion, and Scheduling Motion | Promptly after December 12, 2022, subject to Court's availability; initial hearing may be a scheduling conference upon request of any party, including on the grounds that additional discovery is necessary in connection with the dispute, with a subsequent hearing on the merits to be scheduled by the Court |
|---|---|
| Deadline to identify bellwether cases 3 and 4 and provide notice to the Bankruptcy Court | December 20, 2022 |
| Deadline to preliminarily identify witnesses and expected testimony | January 6, 2023 |
| Deadline to identify case in chief expert topics/field disclosures | January 6, 2023 |
| Kadar Mohansingh and the Estate of Arnold Anthony trials to be tried, back-to-back, in the VI Superior Court | February 1, 2023 or as scheduled by the VI Superior Court[60] |
| Bellwether case 3 to be tried in the VI Superior Court | May 1, 2023, or as scheduled by the VI Superior Court |
| Bellwether case 4 to be tried in the VI Superior Court | June 1, 2023, or as scheduled by the VI Superior Court |
| Fact discovery cutoff (including production of documents, privilege logs, and responses to written fact discovery) | ~~March 24~~June 30, 2023 |
| Deadline to exchange expert reports | ~~June 9~~July 10, 2023 |
| Deadline to exchange rebuttal expert reports | ~~June 30~~July 31, 2023 |
| Expert deposition period | ~~July 6~~August 7 – August ~~4~~28, 2023 |
| Deadline to file any pre-trial motions | ~~August 14~~September 8, 2023 |
| Deadline for objections to pre-trial motions | ~~August 24~~September 18, 2023 |
| Counter-designations and objections to deposition designations and counter-designations | ~~August 24~~September 18, 2023 |

---

[60] Dates related to bellwether trials subject to the schedule of the Virgin Islands Superior Court.

| | |
|---|---|
| Exchange trial witness lists | ~~August 28~~September 22, 2023 |
| Exchange exhibit lists | ~~August 28~~September 22, 2023 |
| Deposition designations | ~~August 28~~September 22, 2023 |
| ~~Pre-trial hearing~~ | ~~September 5, 2023 at 2:00 p.m.~~ |
| Objections to counter-designations | September ~~1~~28, 2023 |
| Objections to witness and exhibit lists | September ~~1~~28, 2023 |
| Deadline to file Proposed Findings of Fact and Conclusions of Law and Pretrial Order | September ~~1~~28, 2023 |
| Pre-trial hearing | Promptly after the September 28, 2023 deadlines subject to Court's availability. |
| Start of Estimation Trial | Promptly after the September ~~6~~28, 2023 ~~at 9:00 a.m~~deadlines subject to Court's availability. |

## **CONCLUSION**

49.     For the foregoing reasons, the Committee respectfully requests that the Court (i) deny the Estimation Motion, (ii) to the extent the Court grants the Estimation Motion, grant the Committee's Bellwether Motion, and (iii) grant the Committee such other and further relief as it deems just and proper.

[*The remainder of this page has been left blank intentionally.*]

24

Dated: November 18, 2022                     Respectfully Submitted,

                                             **AKIN GUMP STRAUSS HAUER & FELD LLP**

                                             /s/ *Marty L. Brimmage*
                                             Marty L. Brimmage, Jr. (State Bar No. 00793386;
                                             S.D. Tex. 30464)
                                             2300 N. Field Street, Suite 1800
                                             Dallas, TX 75201-2481
                                             Telephone: (214) 969-2800
                                             Facsimile: (214) 969-4343
                                             Email: mbrimmage@akingump.com

                                             -and-

                                             Arik Preis (admitted *pro hac vice*)
                                             Mitchell P. Hurley (admitted *pro hac vice*)
                                             Sara L. Brauner (admitted *pro hac vice*)
                                             Katherine Porter (admitted *pro hac vice*)
                                             Theodore James Salwen (admitted *pro hac vice*)
                                             One Bryant Park
                                             New York, NY 10036-6745
                                             Telephone: (212) 872-1000
                                             Facsimile: (212) 872-1002
                                             Email: apreis@akingump.com
                                             Email: mhurley@akingump.com
                                             Email: sbrauner@akingump.com
                                             Email: kporter@akingump.com
                                             Email: jsalwen@akingump.com

                                             *Counsel to the Official Committee of Unsecured
                                             Creditors of HONX, Inc.*

25

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that on November 17, 2022, I conferred with counsel for the Debtor in a good faith effort to resolve the Committee's objections to the Estimation Motion.  I hereby certify that we have engaged in good faith discussion in an attempt to address the Committee's concerns. The dispute remains unresolved.

*/s/ Marty L. Brimmage*
Marty L. Brimmage, Jr.

**CERTIFICATE OF SERVICE**

I certify that on November 18, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marty L. Brimmage*
Marty L. Brimmage, Jr.
