**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HONX, INC.,[1] | ) | Case No. 22-90035 (MI) |
| | ) | |
| Debtor. | ) | **Re: ECF Nos. 490, 512, 523** |
| | ) | |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF HONX, INC. IN FURTHER SUPPORT OF ITS CROSS-MOTION TO
LIFT STAY TO PERMIT UP TO FOUR BELLWETHER TRIALS IN THE
VIRGIN ISLANDS AND AMEND ESTIMATION SCHEDULE**

The Official Committee of Unsecured Creditors (the "Committee") of HONX, Inc., as debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, hereby submits this reply (the "Reply") in further support of its *Cross-Motion to Lift Stay to Permit Up to Four Bellwether Trials in the Virgin Islands and Amend Estimation Schedule* [ECF No. 490] (the "Cross-Motion").[2]  In support of this Reply, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Committee's request for bellwether trials is entirely conditional on the Court denying the Committee's pending motion to dismiss and granting the Debtor's request for estimation proceedings—a process that the Committee and the Honorable Barbara J. Houser (Ret.), as the legal representative for future asbestos claimants (the "FCR"), have both opposed as unwarranted and unlikely to lead towards a confirmable plan under the circumstances of this case.[3]

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is HONX, Inc. (2163).  The location of the Debtor's service address in this chapter 11 case is: 1501 McKinney Street, Houston, Texas, 77010.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Cross-Motion.

[3] *See Future Claimants' Representative's Objection to the Debtor's Estimation Motion* [ECF No. 487] (the "FCR Objection"); *Official Committee of Unsecured Creditors of Honx, Inc.'s (I) Objection to Debtor's Renewed Motion for Entry of an Order Authorizing Estimation of Debtor's Aggregate Liability for Current and Future Asbestos Claims*

If the Court nevertheless determines to move forward with estimation proceedings, the Committee

contends that four bellwether trials should be permitted to proceed before the Superior Court in

the USVI in order to provide the parties and the Court with information that creditors will likely

view as essential to any estimation analysis of the Asbestos Claims.

2.      Hess and the Debtor have settled more than 1,100 cases and have otherwise

engaged in efforts to prevent a jury in the Superior Court of the USVI from rendering a verdict

against them on the Asbestos Claims.  Given the absence of any prepetition verdicts for the parties

and Court to consider in any contemplated estimation proceedings, bellwether trials are necessary

for such proceedings to be able to incorporate accurate and reliable data about how a jury in the

USVI territorial courts would value the claims—information that other courts have recognized is

important to incorporate for estimation purposes.  In addition, and notably, bellwether trials are

also essential in this case in order for any estimation procedures to have a realistic chance of

moving the case towards a resolution.  Given the Debtor's stated intention to propose a plan that

includes a release for Hess under Bankruptcy Code section 524(g),[4] the Debtor will need to obtain

the support of at least 75% of claimants in each affected class.  The Debtor will not be able to use

estimation proceedings to liquidate the Asbestos Claims, impose a *de facto* cap, or cram down a

plan that creditors deem insufficient.  In other words, estimation only can be useful in this case to

the extent it is credible and persuasive to the parties.  As set forth in the Cross-Motion, and given

the facts of this situation and this case, asbestos victims will likely view the missing information

---

*and Establishing a Schedule for Estimation Proceeding and (II) Cross-Motion to Lift Stay to Permit Up to Four Bellwether Trials in the Virgin Islands and Amend Estimation Schedule* [ECF No. 490].

[4] *See* First Day Decl. ¶ 37; *see also Debtor's Amended (I) Reply in Support of Renewed Motion for Entry of an Order Authorizing Estimation of Debtor's Aggregate Liability for Current and Future Asbestos Claims and Establishing a Schedule for Estimation Proceeding and (II) Objection to the Cross-Motion of the Official Committee of Unsecured Creditors of Honx, Inc. to Lift Stay to Permit Up to Four Bellwether Trials in the Virgin Islands and Amend Estimation Schedule* [ECF No. 523] (the "Debtor Objection") ¶ 10 (anticipating creation of a section 524(g) trust).

concerning *actual jury verdicts* that would be supplied by the bellwether trials to be indispensable in this context.  The FCR, likewise, agrees that allowing limited bellwether trials to proceed would be "highly informative to the Court and the parties."[5]

3.　　　The Debtor and Hess would do well to listen to the Committee and the FCR—the fiduciary representatives for all present and future creditors of the Debtor—about what information they understand that *the creditors* will find persuasive.  Unfortunately, the Debtor and Hess ignore this important context, and continue to try to prevent any jury in the USVI from rendering a verdict on the Asbestos Claims.  In that regard, they both oppose the Cross-Motion.[6]  The arguments they raise in opposition to the bellwether trials all suffer from the same fundamental flaw—they fail to acknowledge that the request for bellwether trials is *entirely conditional* on this Court ruling that some estimation proceedings should occur, over the Committee and the FCR's objections, and is requested in order to enable such estimation proceedings to have a greater chance of supplying information that may move these cases towards a confirmable plan.  In the event that the Court orders estimation proceedings to occur, and incorporates a limited number of bellwether trials, then, solely in order to implement such procedures, the automatic stay would need to be lifted for the limited purpose of allowing such trials to proceed in the Superior Court in the USVI.  For the reasons set forth in the Committee's Cross-Motion and as discussed herein, cause exists to lift the stay.

---

[5] FCR Obj. at 9 n.8.

[6] *See generally* Debtor Obj. at 22-34; *Hess Corporation's Response to (1) Official Committee of Unsecured Creditors of Honx Inc.'s (I) Objection to Debtor's Renewed Motion for Entry of an Order Authorizing Estimation of Debtor's Aggregate Liability for Current and Future Asbestos Claims and Establishing a Schedule for Estimation Proceeding and (II) Cross-Motion to Lift Stay to Permit Up to Four Bellwether Trials in the Virgin Islands and Amend Estimation Schedule and (2) the Future Claimants' Representative's Objection to the Debtor's Estimation Motion* [ECF No. 512] (the "Hess Objection").  The Committee will not respond to the several legal and factual inaccuracies in the filings submitted by the Debtor and Hess Objections that each party has since corrected.

## ARGUMENT

**I.     Given the Lack of Any Prepetition Verdicts Against the Debtor or Hess, Bellwether Trials Are a Realistic Solution To Provide Missing Information That Is Important to Estimation and May Move the Parties Towards a Confirmable Plan**

4.      The Debtor broadly derides the request for bellwether trials as unrealistic, incomplete, unworkable, and improper.[7]  In addition to ignoring the context of the request for bellwethers **only if** the Court orders estimation to proceed, the Debtor's and Hess's arguments are premised on a series of misconceptions about the proposed bellwether trials.

5.      *First*, the Debtor argues that including bellwether trials as part of estimation would be wasteful and impractical.[8]  In truth, what is wasteful is the Debtor's proposal to proceed to estimation **without** bellwether trials.  Bellwethers will most likely supply the kind of information that **might** move the parties nearer to settlement: actual USVI jury verdicts on Asbestos Claims.  Under similar circumstances, bankruptcy courts have recognized bellwether trials as "provid[ing] an important data point that most likely will facilitate resolution" and provide guidance to "estimation proceedings under 11 U.S.C. § 502(c),"[9] and recognized the value of a creditor's claims, "as determined by a jury," to represent a key data point that "is important for estimation purposes."[10]

6.      No verdicts for or against HONX exist that could help provide a baseline for determining claim values, and, as the FCR appropriately asks, "what better information could there be about HONX's liability to claimants than the views of the actual Virgin Islands juries?"[11]  Indeed, there are no prepetition verdicts to consider because the Debtor and Hess have either settled

---

[7] Debtor Obj. ¶ 44.

[8] *Id.* ¶ 44.

[9] *See* Mem. Dec. re Mots. for Relief from Stay at 3, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D. Cal. Aug. 16, 2019) [ECF No. 3571] (the "PG&E Decision").

[10] *In re Roman Catholic Archbishop of Portland*, 339 B.R. 215, 220 (Bankr. D. Or. 2006).

[11] FCR Obj. at 9 n.8.

the more than 1,100 cases that have been brought or engaged in efforts to delay and prevent a jury

verdict in the Superior Court in the USVI.[12]

7.       Claimants are well aware of the history of settlements and Hess's other maneuvers

to avoid facing a determination by a jury.  Thus, claimants are unlikely to find credible any

estimation process that does not incorporate a single judgment rendered by a jury from the Superior

Court in the USVI.  As a result, the Committee contends that, without the addition of bellwether

trials, the Debtor's proposed estimation process is a waste of resources and time that ignores the

practical realities of the case.

8.       The Debtor next argues that the proposal to complete the estimation trials within

eleven months is unrealistic.[13]  The Debtor makes this argument, despite the fact that two of the

proposed cases are trial ready *right now*, and despite the fact that the parties required only

approximately six months to bring one of those matters—the Mohansingh case—from its initial

stages to the brink of trial before the Petition Date.[14]  In other words, the parties' own experience

preparing Asbestos Claims for trial in the USVI demonstrates that the timeline for bellwethers

proposed by the Committee is realistic.

9.       *Second*, the Debtor complains that the four bellwether trials that the Committee has

proposed—Mr. Mohansingh, the estate of Mr. Anthony, and two "secondary exposure" cases to

---

[12] Just three days ago, a USVI Federal District Court rendered a decision that highlights these efforts. *See e.g.*, *McNamara v. Hess Corp.*, No. 2020-0060 (D.V.I. Dec. 12, 2022) [ECF No. 123] (attached hereto as **Exhibit A**) (holding that the asbestos litigation case against Hess and HONYC be remanded back to the USVI state court because the defendants engaged in collusive conduct in an attempt to manufacture diversity jurisdiction in violation of the removal statute).  The McNamara case will affect several dozen wrongfully removed cases in the USVI.

[13] Debtor Obj. ¶ 44.

[14] *See* Docket, *Mohansingh v. Hess Oil Virgin Islands Corp., et al.*, No. SX-2006-CV-231 (V.I. Super. Ct.) (briefing for preferential trial completed in late November, 2021); First Day Decl. ¶ 32 (Mohansingh Trial scheduled to begin May 2, 2022).  The fact that the Debtor or Hess may appeal any jury verdict should not be factored into this timeline. The risk of appeal, which necessarily exists in any case, does not stop courts from setting bellwethers because the trial value of claims is the baseline from which the Court (and the parties) may assess value.

be chosen by the parties—are not sufficiently representative of the class of claimants as a whole.[15]

The Committee disagrees.  Nevertheless, the Committee has offered to work with the Debtor to

identify different or additional cases that the Debtor believes are more suitable for bellwether

treatment.  As of the date of this submission, the Debtor has shown no willingness to engage in

such a process.

10.     Moreover, and contrary to the Debtor's suggestion, the two trial-ready cases are not

the cases "Burns Charest believes [] are the strongest and/or most developed,"[16] but rather are trial-

ready because the claimants had the right to, and did invoke, the expedited process conferred by

the Virgin Islands Preference Statute based on their advanced age and ill health.[17]

11.     ***Third***, the Debtor provides no basis for its estimate about the cost of bellwether

trials, but it appears to be based at least in part on the Debtor's mistaken view that it would need a

larger team to account for supposed *pro hac vice* limitations, which it subsequently recognized

was an error and withdrew.[18]  To be sure, estimation in this case will be costly and time consuming

no matter what.  Without bellwethers, however, that time and expense is almost certain to be

entirely wasted.  Further, the costs of the bellwether trials would be less than the cost of litigating

these matters outside of the Chapter 11 Case, as the counts against Hess would not be included.

---

[15] Debtor Obj. ¶¶ 45–46.

[16] *Id.* ¶ 46.

[17] Indeed, it is the Committee's understanding that Mr. Anthony, in particular, sought to expedite his case and preserve his testimony while he was alive because of his extremely poor health.  Mr. Anthony passed away the next year, before his trial.  As to Mr. Mohansingh, it is curious that the Debtor now devotes several paragraphs in its Objection explaining why Mr. Mohansingh should not be used as a bellwether (Debtor Obj. ¶¶ 46, 71, 74–76) when it has spent considerable time on the record in this bankruptcy proceeding and in various papers disparaging the merits of Mr. Mohansingh's case. *See, e.g.*, First Day Decl. ¶ 43 (claiming that, "outside of the litigation, no medical professional has ever advised Mr. Mohansingh that he has an asbestos-related disease," that Mr. Mohansingh's medical condition is "exacerbated by his obesity, advanced age, and other non-employment related health conditions," and that "Mr. Mohansingh did not work inside the Refinery where the asbestos-containing products existed"); Debtor Obj. ¶ 75 ("Mr. Mohansingh is an obese 76-year-old complaining of asthma and shortness of breath upon exertion").  Against this backdrop, one would think the Debtor would be eager to use Mr. Mohansingh's case as one of the four proposed bellwethers.

[18] *See Debtor's Additional Correction* [ECF No. 522].

Finally, the Debtor would only be paying its own legal costs, as the plaintiffs would pay their own

fees in connection with the bellwether trials.

**II.     Cause Exists To Lift the Automatic Stay for the Limited Purpose of Allowing Bellwether Trials To Proceed in the USVI**

12.     The Debtor's argument that the Committee has failed to show "cause" to lift the

stay likewise is misguided.   Courts in the Southern District of Texas often look to the

*Curtis*/*Sonnax* factors when deciding whether cause exists to lift the automatic stay;[19] some

consider a shorter three-factor test.[20]   Regardless of which framework is used, the balance of

factors weigh in favor of lifting the automatic stay to allow bellwether trials to proceed in the event

the Court orders estimation proceedings to proceed.   Indeed, the factors focused on by the Debtor

in its brief only further demonstrate the propriety of lifting the stay here.[21]

13.     ***Lifting the Automatic Stay Will Not Prejudice the Debtor***.[22]   ***If*** estimation is

ordered to occur, lifting the stay to allow bellwether trials will serve, not prejudice, the Debtor's

interests.   The Debtor has made clear its desire to move towards a confirmable plan that includes

a section 524(g) trust, an outcome that is likely unrealistic if estimation does not include

bellwethers.[23]   The Debtor's proposed estimation procedures promise only lengthy, costly, and

complex litigation, with little chance of achieving their ultimate goal for a section 524(g) plan.  As

noted in the Cross Motion and the FCR Objection, the estimation proceedings cannot be used to

---

[19] *See, e.g.*, *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

[20] *See, e.g.*, *In re Kao*, No. 15-31193-H3-13, 2015 WL 9412744, at *2 (Bankr. S.D. Tex. Dec. 21, 2015) (employing "three-factor" test).

[21] References to *Sonnax*/*Curtis* factor numbers in this Reply are to those listed in *Xenon*, 510 B.R. at 112. The factor numbers in the Debtor's  brief appear to represent the order in which they appear in the brief, rather than the cited case.  Accordingly, in some cases, the factor numbers in this Reply will not align with the numbers Debtor's brief.

[22] Three-factor test 1.

[23] 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

compel claimants to agree with the Debtor's negative view of their claims or force them to accept a plan that claimants view as undercompensating their injuries.

14.     The Debtor argues that the bellwether trials "will not provide the Debtor (or the Court) with the information necessary to progress resolution of the vast majority of claims in this case."[24]  Tellingly, the Debtor does not acknowledge here the need to provide information to claimants through this process, and it is claimants that must vote in a supermajority vote to approve the "ultimate goal" and "establishment of a section 524(g) trust."[25]

15.     ***The Balance of Hardship Tips in Favor of Including Bellwether Trials in Any Estimation Proceeding***.[26]  The Debtor's argument that no cognizable harm will result to the proposed bellwether plaintiffs if the Cross-Motion is not granted misunderstands the fact that ***all*** claimants (and even the Debtor) will be harmed by the cost and delay that will result if the parties are forced to spend at least ten months litigating the Debtor's proposed estimation proceedings, only to find themselves in the same posture in which they find themselves today, with little or no change in either side's assessment of the case.

16.     The Debtor's "time, attention, and resources"[27] will not be "diverted" from the bankruptcy case should bellwethers be ordered to proceed; rather, the Debtor will be focusing on a critical component of the estimation proceeding that it believes "is a fundamental step to negotiating a resolution with the holders of the Asbestos Claims and . . . resolving this chapter 11 case."[28]

---

[24] Debtor Obj. ¶ 56.

[25] *Id.* ¶ 56.

[26] Three-factor test 2, *Sonnax*/*Curtis* Factor 12.

[27] Debtor Obj. ¶ 55.

[28] *Id.* ¶ 6.

17.     Finally, the balance of hurt tips decidedly in favor of permitting the bellwether trials.  If estimation proceeds without such trials, the parties will spend at least ten months and substantial resources litigating the Debtor's estimation issues.  At the end of such trial, the Debtor will be unable to use those results to liquidate a single claim or force the claimants to accept a plan that the claimants perceive as inadequate.  Moreover, the information that the Debtor has indicated it will adduce during estimation proceedings—such as skepticism about "secondary exposure" claims, and aspersions about the lung disease experienced by certain claimants—is decidedly unlikely to convince claimants that their Asbestos Claims should not be valued similarly to the value implied by Hess's recent settlements with other similarly-situated claimants.

18.     ***The Bellwether Cases Are Likely to Succeed***.[29]  The Debtor strangely argues that the Committee "cannot demonstrate that it is likely to prevail on the merits of the proposed bellwether cases."[30]  In the very unlikely event that the claimants did not prevail in the bellwether trials, such an outcome would be a boon for the Debtor and Hess.  Of course, in truth, the Debtor and Hess have steadfastly avoided any trials because they know that claimants ***are*** likely to prevail.

19.     ***Complete Resolution of the Issues***.[31]  Despite its assertions to the contrary, the Debtor's proposed estimation process will not facilitate a complete resolution of this case—or as the Committee and the FCR contend, even partially advance it towards resolution.  Jury verdicts, however, would introduce new data points that will finally resolve the unanswered question about how a jury in the USVI Superior Court would value the Asbestos Claims and provide information that the creditors expect to assist the parties in moving towards complete resolution.  Such verdicts would also ensure (in the Debtor's words) "an accurate, neutral estimation process [that] will

---

[29] Three-factor test 3.

[30] Debtor Obj. ¶ 58.

[31] *Sonnax/Curtis* Factor 1.

produce the crucial information that all stakeholders need to truly understand the current and future Asbestos Claims."[32]   The resulting jury verdicts will also aid the Court in its assessment of the Debtor's liability, serving as a concrete indicator of such liability while also reducing the need for the Court to make the assumptions and projections that it might otherwise need to make in the absence of such verdicts.   Based on the Debtor's Estimation Issues, the Debtor's hopes for estimation proceedings alone will not lead to the necessary consensus to confirm a section 524(g) plan.

20. ***Lack of any connection with or interference with the bankruptcy.***[33]   The Debtor argues that the "most important factor" is the "effect of such litigation on the administration of the estate."[34]   Here, allowing the bellwethers to proceed in the context of estimation proceedings would advance the administration of the estate, by transforming the estimation proceedings from a process that the creditors oppose, as a waste of time and resources, into one that may supply important information about how USVI juries value the Asbestos Claims that could assist the parties in negotiating a confirmable plan.   In addition, including bellwethers would enhance the credibility of and add value to the estimation proceeding the Debtor seeks.   Other courts have recognized these dynamics and lifted the stay to allow bellwethers to proceed where—like here— the parties and the Court do not have the benefit of a single jury verdict.[35]

21. ***Existence of a specialized tribunal with expertise.***[36]   While it is not a specialized tribunal, the USVI Superior Court is uniquely suited to produce the kind of information that may

---

[32] Debtor Obj. ¶ 61.

[33] *Sonnax/Curtis* Factor 2.

[34] Debtor Obj. ¶ 62.

[35] PG&E Decision at 3; Order at 2, *In re Roman Catholic Archbishop of Portland*, No. 04-37154-elp11 (Bankr. D. Or. Mar. 28, 2007) [ECF No. 4906] (District Court withdrawing the reference and "decid[ing] that summary 'mini-trials,' with some claims tried to the court and some claims tried to anonymous advisory juries, would be the best and most efficient approach").

[36] *Sonnax/Curtis* Factor 4.

move this case to resolution.[37]  The USVI is the forum sited where the Refinery sits, where the conduct occurred, and where the plaintiffs suffered the harm giving rise to the Asbestos Claims. The USVI is also the forum in which the plaintiffs commenced and have prosecuted their claims, in some cases for more than a decade. The USVI court oversaw the proceedings by which the Mohansingh Trial and Anthony Trial became ready (or nearly ready) for trial.  And most importantly, absent settlement, the Asbestos Claims ultimately will be resolved by USVI juries.

22.      ***Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation is irrelevant.***[38]  While the Debtor asserts that insurance coverage for the Asbestos Claims has been exhausted,[39] this is not a chapter 11 case where the Debtor is funding its own litigation or where the Debtor has limited funds that must be preserved.  Here, the Debtor has no meaningful assets and any litigation—whether before this Court or in bellwether trials— has been and must continue to be funded by Hess.

23.      ***No prejudice will result from litigation in another forum.***[40]   The Debtor's suggestion that litigating the bellwether trials would prejudice the interests of other creditors is incorrect.[41]  First, the Debtor ignores the benefit that will accrue to all claimants by finally having verdicts to show how the USVI juries will value the Asbestos Claims.  Moreover, only the terms of a plan, if the Debtor is able to achieve the requisite creditor support for such plan, can dictate the treatment of a creditor's claim in a chapter 11 case.  As such, the use of bellwether trials does not foreclose an equitable result for all claimants in this case, despite what the Debtor suggests.

---

[37] *See* Cross-Motion ¶ 43 (citing cases).

[38] *Sonnax*/*Curtis* Factor 5.

[39] Debtor Obj. ¶ 66.

[40] *Sonnax*/*Curtis* Factor 7.

[41] Debtor Obj. ¶ 68.

24.     ***The interest of judicial economy and the expeditious and economical determination of litigation for the parties favor bellwethers.***[42]  As discussed at length in the Cross Motion and this Reply, the interest of judicial economy is served by including bellwether trials in the estimation proceedings, to the extent that the Court orders estimation proceedings to occur. The Debtor tries to rebut the evident efficiencies gained from the bellwether trials by arguing that the Asbestos Claims should be resolved "through the section 524(g) trust process" and that "estimation proceedings will avoid the delay of having to liquidate each of the Asbestos Claims."[43] This argument is bizarre.  In the event the Debtor can achieve requisite consent to confirm a plan with a section 524(g) trust, then such trust will administer the Asbestos Claims and there will be no purpose in liquidating any such claim in advance of that process by the trust.  Estimation proceedings, moreover, can***not*** be used as a substitute to liquidate personal injury tort claims, like the Asbestos Claims.[44]

25.     The Debtor further attempts to dispute the judicial economy to be gained by distinguishing the *PG&E* bellwether trials, on the basis that the *PG&E* trial addressed a larger overall percentage of the debtor's liability in that case.[45]  The Debtor completely ignores the additional case cited by the Committee, which shows that where, like here, a debtor had a history of settlements but no history of trials to value the claims, it is important for estimation purposes to consider the value of claims as determined by a jury.[46]  Instead of estimating the value of Asbestos Claims, the Debtor appears intent to use estimation proceedings as a sort of expedited claims

---

[42] *Sonnax*/*Curtis* Factor 10.

[43] Debtor Obj. ¶ 69.

[44] 28 U.S.C. § 157(b)(2)(B).

[45] Debtor Obj. ¶ 70.

[46] Cross-Motion ¶ 42 (citing *Roman Catholic Archbishop of Portland of Oregon*, 339 B.R. at 220).

objection process in order to invalidate claims held by groups of claimants at a time.[47]  To be sure,

the Debtor is entitled to use the estimation process (if the Court orders estimation to proceed) to

gain a better understanding of the estimated value of different types of prepetition Asbestos Claims

that are being asserted against it.  And the Committee also agrees that, if this Chapter 11 Case is

not dismissed, the holders of Asbestos Claims should receive only the recoveries to which they are

entitled under any plan that has been approved by this Court after meeting all requisite

confirmation standards and that truly meritless claims should not be paid from the 524(g) trust to

the extent a plan is confirmed.  But the Debtor may not attempt to actually liquidate the Asbestos

Claims in this bankruptcy case by way of estimation, because the Committee submits that this

Court lacks the jurisdiction to do so.[48]

26.     ***The foreign proceedings have progressed to the point where the parties are***

***prepared for trial***.[49]  The Debtor concedes that the Committee proposed as bellwethers two cases

that are trial ready, which the Debtor has disparaged.[50]  As such, the Committee has offered and

remains willing to work with the Debtor to identify four cases that the Debtor will view as

representative and prepare those cases for trial expeditiously.

## III.     The Committee's Bellwether Proposal Is Procedurally Proper

27.     Both the Debtor and Hess argue incorrectly that the Cross-Motion is procedurally

deficient because the request for stay relief supposedly is combined with a request for other relief,

---

[47] Debtor Obj. ¶ 71.

[48] *See* 28 U.S.C. § 157(b)(2)(B) ("Core proceedings include, but are not limited to . . . allowance or disallowance of claims against the estate . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.") see *In re Dow Corning Corp.*, 211 B.R. 545, 561 (Bankr. E.D. Mich. 1997) ("[T]he liquidation or estimation of a personal injury or wrongful death claim for purposes of allowance and distribution is not a core proceeding.").

[49] Sonnax/Curtis Factor 11.

[50] Debtor Obj. ¶ 76.

in contravention of Bankruptcy Local Rule 4001-1(a)(8).[51]  The Committee is not seeking relief

from the stay in combination with any other request for relief.  Rather, the Committee has opposed

relief requested by the Debtor, and the Committee's request to lift the stay is entirely conditional

on the Court's decision to proceed with estimation over that objection and to proceed with

bellwether trials.  Thus, the Cross-Motion and its request for conditional relief from the stay is

procedurally proper.

**CONCLUSION**

28.      For the foregoing reasons, the Committee respectfully requests that the Court grant

the Cross-Motion in the event the Court grants the Estimation Motion.

---

[51] *Id.* ¶ 48; Hess Obj. ¶ 16.

Dated: December 15, 2022

Respectfully Submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Marty L. Brimmage*
Marty L. Brimmage, Jr. (State Bar No. 00793386; S.D. Tex. 30464)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com

-and-

Arik Preis (admitted *pro hac vice*)
Mitchell P. Hurley (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
Theodore James Salwen (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile (212) 872-1002
Email: apreis@akingump.com
Email: mhurley@akingump.com
Email: sbrauner@akingump.com
Email: kporter@akingump.com
Email: jsalwen@akingump.com

*Counsel for the Official Committee of Unsecured Creditors of HONX, Inc.*

## CERTIFICATE OF SERVICE

I certify that on December 15, 2022, I caused a copy of the foregoing document to be served on by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Marty L. Brimmage*

Marty L. Brimmage, Jr.