Case 22-90035   Document 564   Filed in TXSB on 12/28/22   Page 1 of 7

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 28, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| | § | CASE NO: 22-90035 |
| HONX, INC., | § § | |
| Debtor. | § § | |
| | § § | CHAPTER 11 |

### MEMORANDUM OPINION

The Official Committee of Unsecured Creditors filed a motion to dismiss or convert HONX's chapter 11 case for cause. For the reasons stated below, the Court denies the motion.

### BACKGROUND

The parties stipulated in a hearing held on October 17, 2022 at 2:00 P.M. that, for the purpose of ruling on the Committee's motion to dismiss, the Court is to take all the factual allegations in the debtors' pleadings as true. (ECF No. 388 at 9, 17, 18).

According to the debtor, HONX's business activity consists solely of defending itself against asbestos litigation stemming from its earlier operation of an oil refinery in St. Croix. (ECF No. 360 at 2). Over 1,500 plaintiffs have filed claims against HONX or its predecessors in interest as well as Hess Corporation (the non-debtor parent company of HONX) since 1987. (ECF No. 360 at 2). HONX made efforts to reach a global agreement which it believed, at the time, would fully resolve its asbestos-related liabilities in 2018. (ECF No. 360 at 7). But, in recent years, almost 1,000 new claims have either been filed or have been threatened against HONX. (ECF No. 360 at 2). Having exhausted much of its resources in its earlier attempt to resolve its liabilities, HONX filed this chapter 11 petition "to address and fairly resolve its alleged asbestos liabilities in an effective, efficient, and equitable forum pursuant to section 524(g) of the Bankruptcy Code." (ECF No. 360 at 16).

By HONX's calculation, it would take roughly 40 years to litigate each of the 1,000 claims in the Judicial District of St. Croix, even with the additional resources and mechanisms the jurisdiction has implemented to try to accommodate the influx of litigation. (ECF No. 360 at 7). HONX has suggested using funding from its non-debtor parent, Hess, to achieve its goal of finally dealing with its asbestos-related liability via a § 524(g) trust. (ECF No. 360 at 10). The Committee alleges three separate grounds for dismissal for cause: (i) bad faith; (ii) no reasonable likelihood of rehabilitation; and (iii) failure to maintain insurance. (ECF No. 324).

## JURISDICTION

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## LEGAL STANDARD

Under 11 U.S.C. § 1112(b), the Court must convert or dismiss a chapter 11 case on the motion of a party in interest "for cause." The movant bears the burden of showing cause exists to dismiss a debtors' chapter 11 case. *In re Ford Steel, LLC*, 629 B.R. 871, 879 (Bankr. S.D. Tex. 2021). "'Cause' includes," among other things, (i) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" or (ii) "failure to maintain appropriate insurance that poses a risk to the estate or the public." 11 U.S.C. § 1112(b)(4). Additionally, a finding of bad faith may serve as cause for dismissal. *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). The "[r]equirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *Id.* The determination of whether a debtor filed in bad faith is "predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than any single datum." *Id.* Courts employ a totality-of-the-

circumstances test in making the determination, which involves "an on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *In re Ozcelebi*, 639 B.R. 365, 396 (Bankr. S.D. Tex. 2022). While a finding of bad faith is a legal conclusion, it is a heavily fact-dependent inquiry, and the parties agreed to treat HONX's facts as true.

## DISCUSSION

HONX did not file its bankruptcy petition in bad faith. Congress wrote § 524(g) to codify what it described as a "creative solution to help protect future asbestos claimants." HOUSE REPORT (REFORM ACT OF 1994) note to § 524(g). The House Report comments that

> ". . . the committee also recognizes that the interests of future claimants are ill-served if Johns-Manville and other asbestos companies are forced into liquidation and lose their ability to generate stock value and profits that can be used to satisfy claims. Thus, the tension present in the trust/injunction mechanism is not unlike the tension present in bankruptcy generally."

*Id*. Congress recognized that while an asbestos bankruptcy differs from a "classic" bankruptcy with an insolvent or near-insolvent debtor, it is still a forward-looking solution meant to treat fairly all parties in interest. That is the hallmark purpose of chapter 11. That is not a "bad faith" motive.

It bears little on whether HONX filed its bankruptcy in good faith for the Committee to point out that the "true target" of their litigation is Hess. (ECF No. 38). In making its bad faith argument, the Committee draws comparisons to Texas divisive-merger bankruptcies in which new companies are created solely for the purpose of absorbing their parents' liabilities. But the Court need not comment on divisive-merger bankruptcies here because HONX was not born of a divisive merger. HONX engaged in its own business and accrued its own asbestos liabilities in the course of operating that business. It did not inherit or absorb Hess's liabilities, which exist separate and apart from those of HONX. (ECF No. 360 at 23).

The Committee correctly points out scenarios that might very well be bad faith filings. For example, the Fifth Circuit pointed out certain patterns in *Little Creek* which, while not dispositive,

lean toward a lack of good faith, including an attempt by a debtor to forestall the loss of property in litigation that has stalled. *Matter of Little Creek*, 779 F.2d at 1073. Absent the development of an evidentiary record necessary to prove that any of those scenarios apply here, these alleged patterns are merely hypothetical examples of ways that HONX *could* act in bad faith but has not on these facts. HONX indicated that its purpose in filing for bankruptcy was to fairly and efficiently deal with its asbestos liability in exactly the manner Congress intended when it enacted § 524(g). In light of HONX's assertion that resolving the matter in bankruptcy is better for asbestos claimants given the backlog in the Judicial District of St. Croix, the Court likewise does not accept the Committee's premise that the use of § 524(g) was a bad faith attempt to gain an unfair advantage in the litigation.[1] (ECF No. 324 at 43).

Alternatively, the Committee suggests that cause exists to dismiss HONX's bankruptcy because it does not intend to "rehabilitate" per the language of § 1112. The Committee's contention that HONX has no ongoing business and therefore cannot be said to have a goal of "rehabilitation" misses the point. There is no ongoing business requirement in the Code. *Toibb v. Radloff*, 501 U.S. 157, 166 (1991). By the Committee's logic, any chapter 11 process that purports to create a plan of liquidation rather than reorganization, for example, would be dismissed for cause. Yet, sometimes, a plan of liquidation is better for all parties than attempting to salvage the business as an ongoing matter or allowing the provisions of chapter 7 or a race to the courthouse to dictate the liquidation process. Likewise, here, though the debtor does not purport to revamp

---

[1] "Far from seeking to delay or avoid resolution of alleged asbestos liability, the Debtor (with funding from Hess) filed this bankruptcy case with the intent to provide efficient and fair compensation for all meritorious claims, while maximizing assets available to pay such compensation by avoiding the overwhelming transaction costs of the seriatim litigation of over 900 asbestos lawsuits in the Virgin Islands courts." (ECF No. 360 at 10).

its long-dormant business operations, it is using the bankruptcy process to preserve value for the future.

"Rehabilitation" is not synonymous with "reorganization" as the Committee implies or else Congress would have used the word "reorganization" in § 1112. *See Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Congress says what it means and means what it says."); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another . . ." the distinction is meaningful.). "Rehabilitation," as it is used in § 1112, is better read as encompassing a debtor's intention to use the bankruptcy process to prevent a complete and total loss of value. HONX has met this standard by pointing out that, in bankruptcy, it is able to secure funding from its parent with which it may be able to pay the asbestos claimants. (ECF No. 360 at 31, 32). Outside of bankruptcy, that value is lost because HONX has no other going concern as a business and no other means to pay claims. (ECF No. 360 at 1).

Even if the likelihood of rehabilitation was low, this would not be enough to mandate dismissal for cause. The language of the Code requires *both* "the absence of a reasonable likelihood of rehabilitation" *and* "substantial or continuing loss to or diminution of the estate." 11 U.S.C. § 1112(b)(4)(A); *see also In re Ford Steel, LLC*, 629 B.R. at 880. The Committee complains that Hess's funding commitment of $10 million is inadequate to support HONX's bankruptcy. (ECF No. 324 at 41). However, Hess has already contributed well beyond its initial commitment and "provided uncontroverted testimony that it would support this process and the funding of the estate." (ECF No. 360 at 31, 39). Because HONX has this ready source of funding from its parent, it is not experiencing a substantial or continuing loss—particularly where its only losses are the asbestos-related litigation costs it seeks to minimize through the bankruptcy process.

The final basis for dismissal for cause the Committee argues is that HONX has failed to maintain insurance coverage, which poses a material risk to the estate and the public. *See* 11 U.S.C. § 1112(b)(4)(C). However, the Committee fails to show how it poses a risk for a company with no operations beyond defense of the asbestos claims to not maintain insurance. (ECF No. 360 at 39). The failure-to-insure provision of § 1112 addresses the situation where a debtor's failure to maintain proper insurance exposes the estate to liabilities which threaten creditors' recoveries, the stability of the bankrupt entity, or the public generally. *See, e.g., In re Delta AG Group, LLC*, 596 B.R. 186, 196 (Bankr. W.D. La. 2019) (dismissing a case for failure to maintain insurance to address inherent risks in the debtors' business operations). On these facts, this is not a concern, as the asbestos claimants are the only "threat" against the estate, and Hess has committed to funding HONX's bankruptcy to address that liability. (ECF No. 360 at 39). There are no inherent risks in HONX's business against which it is necessary for insurance to protect the estate.

Other arguments raised by the Committee are premature. The crux of the Committee's remaining arguments center around its contentions that (i) the Committee is hesitant to agree to a channeling injunction that would release Hess from liability and (ii) Hess will not fully fund HONX's bankruptcy without such an injunction. (ECF No. 364 at 4). HONX has not yet put forth a plan proposing a channeling injunction, and Hess has indicated its intent to continue to fund HONX's bankruptcy. (ECF No. 360 at 39). Because HONX has its own asbestos-related liability independent of its parent corporation, the debtor in this case has a valid § 524(g) purpose regardless of whether the parties come to a consensual solution for dealing with Hess's liability. Raising concerns over Hess's willingness to fully fund a § 524(g) trust or the Committee's willingness to agree to a channeling injunction releasing Hess from liability are not indicators of bad faith in

HONX's bankruptcy or grounds for dismissal. They are better preserved as inquiries for the parties' negotiations moving forward or as matters to consider at confirmation.

Because the Committee has not carried its burden of establishing cause to dismiss or convert, it is not necessary to determine whether unusual circumstances exist. *See* 11 U.S.C. § 1112(b)(2).

## **CONCLUSION**

The Committee's motion to dismiss or convert HONX's chapter 11 case is denied. It was likely a fatal flaw for the movants to proceed without any evidentiary contest to the Debtor's allegations.

SIGNED 12/28/2022

_____
Marvin Isgur
United States Bankruptcy Judge