IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HONX, INC., | § | Case No. 22-90035 (MI) |
| | § | |
| Debtor. | § | |

**ALCOA WORLD ALUMINA LLC AND LOCKHEED MARTIN CORPORATION'S OBJECTION TO CONFIRMATION OF THE FIRST AMENDED <u>CHAPTER 11 PLAN OF REORGANIZATION OF HONX, INC.</u>**
**[Relates to Docket No. 885]**

Alcoa World Alumina LLC ("<u>Alcoa</u>") and Lockheed Martin Corporation ("<u>Lockheed</u>") object to confirmation of the First Amended Chapter 11 Plan of Reorganization of HONX, Inc. [Docket No. 885] (the "<u>Plan</u>") and respectfully state as follows:

**Background**

1. As set forth in the Disclosure Statement, HONX, Inc. ("<u>HONX</u>" or the "<u>Debtor</u>") is a wholly owned subsidiary of Hess Corporation ("<u>Hess</u>") and is the successor to Hess Oil Virgin Islands Corporation ("<u>HOVIC</u>"). The Debtor constructed, owned, and operated an oil refinery in St. Croix, U.S. Virgin Islands (the "<u>Oil Refinery</u>") from 1965 until 1998. In 1998, the Debtor and a subsidiary of the Venezuela national oil company formed HOVENSA L.L.C., with each party owning a 50% membership interest. HOVENSA subsequently operated the Oil Refinery from October 1998 until February 2012 and utilized the Oil Refinery as an oil storage and distribution center from February 2012 through January 2016.

2. In November 2000, the United States Environmental Protection Agency (the "<u>EPA</u>") entered into an Administrative Order on Consent (the "<u>Consent Order</u>") with Alcoa, Lockheed, HOVIC (the Debtor's predecessor), HOVENSA, and other respondents (collectively, the "<u>Respondents</u>") relating to an alumina-refining facility (the "<u>Alumina Facility</u>") located adjacent to the Oil Refinery. *See* Consent Order, attached as **<u>Exhibit 1</u>**. Pursuant to the Consent Order, the EPA identified an oil plume floating on top of groundwater underlying the Alumina Facility and the Oil Refinery. *See* Consent Order at ¶ 15. The

Consent Order imposed certain obligations on the Respondents that, in the EPA's view, were necessary to protect public health and the environment. *See* Consent Order at ¶ 33. Furthermore, the Consent Order imposed certain obligations solely on HOVENSA to accomplish the objectives set out therein. *See* Consent Order at ¶ 49. The Debtor (and the other Respondents) agreed not to contest the EPA's jurisdiction to issue, enforce, or compel compliance with any of the Consent Order's terms. *Id.* at ¶ 86.

3. On November 30, 2000, the Debtor[1] and the other Respondents entered into the St. Croix Alumina Facility Site Participation Agreement (the "SPA") to establish a framework for complying with the Consent Order and to allocate costs for the associated work.[2] Pursuant to the SPA, the Debtor has served and continues to serve as the Project Coordinator. As Project Coordinator, the Debtor, among other responsibilities, coordinates the preparation and submission to the EPA of periodic reports required by the Consent Order and is the Respondents' liaison to the EPA. The Debtor also maintains an escrow account, holding funds belonging to the Debtor, Alcoa, and Lockheed, for the payment of necessary expenses to comply with the Consent Order. The SPA obligates the Debtor to pay its allocated share of various costs.

4. The SPA shall remain in effect until the termination of the Consent Order. Currently, Alcoa and Lockheed expect that the Consent Order (and thus the SPA) will continue in effect until at least 2035.

**The Plan's Treatment of the SPA and Unsecured Claims**

5. Alcoa and Lockheed (collectively, the "Objectors") understand that, during the bankruptcy case, the Debtor has continued to comply with the Consent Order and its obligations as Project Coordinator under the SPA. Because the Debtor appears to have no material income or assets, it has necessarily relied upon its parent, Hess, to fund and perform its obligations under the Consent Order and the SPA. In fact, the Objectors understand that Hess has not only funded HONX's monetary obligations but has also supplied the employees (or contractors) who have performed HONX's nonmonetary obligations.

6. The Debtor's Plan provides that all executory contracts not expressly assumed will be

---

[1] As noted above, HOVIC was party to the Consent Order and the related Site Participation Agreement. The Debtor has acknowledged in its Disclosure Statement that it is HOVIC's "corporate successor."

[2] The SPA is confidential and therefore not attached to this objection.

deemed rejected as of the Plan Effective Date. *See* Plan Art. V(A). While the Debtor has not yet rejected the SPA, the Plan makes clear that "the Debtor does not contemplate that any Executory Contracts or Unexpired Leases will be assumed . . . ." *Id*. at Art. V(C). The Plan classifies all contract-rejection claims as Class 4 General Unsecured Claims, entitled to no distribution under the Plan. *Id.* at Art. V(B) & III(B)(4).

## Objections to the Debtor's Plan

### A. The Plan Unfairly Discriminates against Class 4 General Unsecured Creditors.

7.  The Plan's sole purpose is to provide a mechanism for Hess to permanently resolve decades-long litigation, involving more than 1,500 asbestos personal-injury claims—an objective that Hess apparently could not achieve outside of the present bankruptcy case. In exchange for contributing more than $100 million to an asbestos trust, Hess will receive releases from all current and future asbestos claimants and the protection of a permanent injunction barring future asbestos litigation against Hess. The Plan provides a resolution process for asbestos claims and for the payment of Allowed Class 3 Asbestos Claims in full. *See* Disclosure Statement Hearing Tr. at 8-9, attached as **Exhibit 2**.[3]

8.  In contrast to the Class 3 claimants, Class 4 General Unsecured Claims receive no distributions under the Plan. Class 3 and Class 4 claimants are similarly situated, unsecured creditors, and the Plan's extremely disparate treatment between the classes constitutes unfair discrimination in violation of 11 U.S.C § 1129(b)(1). Neither the Plan nor Disclosure Statement offers any justification for this discriminatory treatment. The Creditors' Committee noted in the Disclosure Statement that it was "still analyzing" and had "not yet reached a conclusion regarding the Debtor's proposal to provide no recovery" to Class 4 claimants. *See* Disclosure Statement at 2. Although unclear, the Creditors' Committee (a fiduciary for all unsecured creditors) appears to justify its diffidence regarding the unfair discrimination between its constituents by noting that Class 4 claimants are not required to provide releases to nondebtor parties, including Hess. *Id.* This hardly justifies the differing treatment. While Class 3 claimants are

---

[3]  In conjunction with their Disclosure Statement objection, the Objectors sought clarity regarding anticipated recoveries by Class 3 claimants to allow the Objectors to evaluate a potential unfair discrimination objection to Plan confirmation. At the Disclosure Statement hearing, Objectors' counsel made clear the Debtor's representations that Allowed Class 3 Asbestos Claims are anticipated to be paid in full. *Id.* Debtor's counsel did not dispute this point.

required to release their claims against third parties, those claimants are being paid in full; accordingly, they have no need to pursue litigation against nondebtors. Regardless, the Class 4 claimants' retention of their claims against nondebtors does not justify their receipt of no recovery from the debtor.

9. The Debtor and Hess cannot avail themselves of the Bankruptcy Code's protections without also abiding by its requirements. There can be no greater disparity in treatment between Class 3 and Class 4 claimants—one class receives a full recovery, while the other receives nothing. The Plan's unfair discrimination between these classes precludes confirmation.

### B. The Confirmation Order Should Make Clear that the Objectors' Claims against Hess and other Nondebtors are Preserved.

10. The Plan provides that Class 4 claimants are not Releasing Parties and thus are not subject to the Plan's third-party releases of nondebtor parties. *See* Plan at Art. I(A)(117) (defining Releasing Parties to exclude holders of Class 4 claims). In their Disclosure Statement objection, the Objectors raised concerns that the Plan's proposed release of all estate claims against Hess and other nondebtor parties might be interpreted to impair creditors' claims against nondebtors. *See Alcoa and Lockheed's Objection to the Disclosure Statement Relating to the Chapter 11 Plan of Reorganization of HONX* [Docket No. 858] at 4. If the Debtor rejects the SPA (as anticipated), Alcoa and Lockheed may have claims against Hess or other nondebtor entities arising under alter ego, veil piercing, or other similar theories and remedies. At the Disclosure Statement hearing, the Debtor acknowledged that neither the third-party releases nor the estate releases would impair or affect the Objectors' claims against Hess or other nondebtors. *See* Exhibit 2 (Disclosure Statement Hearing Tr.) at 8-9. The Confirmation Order should clearly preserve the Objectors' claims to avoid any post-confirmation dispute regarding the extent of the Plan's release provisions.

### Conclusion

11. The Objectors respectfully request that the Court deny confirmation of the Debtor's Plan because it unfairly discriminates against Class 4 General Unsecured Claims.

<div style="display: flex;">

Dated: September 11, 2023
Houston, TX

</div>

Respectfully submitted,

REED SMITH LLP

By: */s/ Paul D. Moak*
Paul D. Moak (Texas Bar No. 00794316)
REED SMITH LLP
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: (713) 469-3800
Facsimile: (713) 469-3899
E-mail: pmoak@reedsmith.com

***Attorneys for Alcoa World Alumina LLC and Lockheed Martin Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2023, a true and correct copy of the foregoing objection was served electronically through the Court's ECF transmission facilities on all parties registered to receive ECF notice in the above-captioned chapter 11 cases.

*/s/ Paul D. Moak*
Paul D. Moak
REED SMITH LLP