# EXHIBIT 1

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 2**

-------------------------------------------------------x
                                                       :
In the Matter of                                       :
                                                       :
St. Croix Alumina, L.L.C.,                             :    **ADMINISTRATIVE ORDER**
ALCOA World Alumina, L.L.C.,                            :         **ON CONSENT**
Virgin Islands Alumina Company,                        :
Century Aluminum Company, Inc.,                        : **Docket No. RCRA-02-2001-7301**
Lockheed Martin Corporation,                           :
Hess Oil Virgin Islands Corp., and                     :
HOVENSA, L.L.C.,                                        :
                              Respondents.             :
                                                       :
Proceeding Under Section 7003 of the Solid             :
Waste Disposal Act, as amended.                        :
-------------------------------------------------------x


## I. JURISDICTION

1.    This Consent Order (the "Order" or "Consent Order") is issued pursuant to the authority
      vested in the Administrator of the United States Environmental Protection Agency (EPA)
      by Section 7003 of the Solid Waste Disposal Act, as amended by the Resource
      Conservation and Recovery Act of 1976 and the Hazardous and Solid Waste
      Amendments of 1984 (collectively referred to hereinafter as "RCRA" or "the Act"), 42
      U.S.C. Section 6973. The authority vested in the Administrator has been duly delegated
      to the Regional Administrator of EPA Region 2 by EPA Delegation No. 8-22-C, dated
      May 11, 1994.

2.    This Consent Order with EPA is entered into voluntarily by the Respondents listed in
      Section II. This Consent Order documents the commitment of the Respondents to work
      together with EPA to implement action as provided in this Order. By signing this Order,
      the Respondents consent to issuance of this Order.

3.   The United States Virgin Islands (USVI) Government has been given notice of the issuance of this Consent Order pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).

4.   This Consent Order is issued to the Respondents identified below.

## II. RESPONDENTS

5.   Respondents are: St. Croix Alumina, L.L.C. (SCA), ALCOA World Alumina, L.L.C. (formerly known as ALCOA Alumina and Chemicals, L.L.C.) (ALCOA), Virgin Islands Alumina Company (VIALCO), Century Aluminum Company, Inc. (Century), Lockheed Martin Corporation (Lockheed Martin), Hess Oil Virgin Islands Corp. (HOVIC), and HOVENSA, L.L.C. (HOVENSA).

6.   Respondent SCA has been an operator of the alumina refinery facility since approximately July, 1995, and is located at 1 Estate Anguilla, Kingshill, St. Croix, U.S. Virgin Islands (hereinafter "the Facility"). For purposes of this Order, the Facility shall mean all land, structures, other appurtenances, and improvements on the SCA property, and all SCA-owned contiguous property.

7.   Respondent ALCOA has been an owner of the Facility since approximately July, 1995, and its corporate headquarters is located at 201 Isabella Street, Pittsburgh, PA. 15212.

8.   Respondent VIALCO purchased the Facility from Martin Marietta Alumina, Inc. (MMA) in May, 1989 and owned and operated the Facility from approximately May, 1989 through July, 1995.

9.   Respondent Century became an owner of VIALCO on or about April, 1995, and is located at 2511 Garden Road, Bldg A, Suite 200, Monterey, California 93940.

10.  Martin Marietta Corporation (MMC) and/or its subsidiaries Martin Marietta Aluminum, Inc. (MM Aluminum) and MMA, owned and operated the Facility from at least 1972 until approximately May, 1989.

11.  MMC, MM Aluminum, and MMA merged into Respondent Lockheed Martin on or about January, 1996. Respondent Lockheed Martin's corporate headquarters is located at 6801 Rockledge Drive, Bethesda, Maryland 20817.

12.  Respondent HOVIC formerly owned and operated an oil refinery facility located at Limetree Bay, which is adjacent and contiguous to the eastern boundary of the Facility, from approximately 1967 to 1998. Respondent HOVIC's corporate headquarters is located at 1185 Avenue of the Americas, New York, N.Y. 10036.

13.  Respondent HOVENSA assumed ownership and operational control of the HOVIC oil refinery facility on or about October 30, 1998. HOVENSA is 50% owned by HOVIC

and 50% owned by PDVSA V.I., Inc. (a wholly owned subsidiary of Petroleos de Venezuela S.A.).    HOVENSA's corporate headquarters is located at 1 Estate Hope, Christiansted, St. Croix, United States Virgin Islands, 00820.

## III. PARTIES BOUND

14.   This Order shall apply to and be binding upon EPA, the Respondents and the Respondents'agents, successors and assigns.  The Respondents shall provide a copy of this Order to each contractor hired to perform work pursuant to this Order and to each person representing the Respondents with respect to the work, within fourteen (14) calendar days after the effective date of the Order or the date such services are retained, whichever date occurs later.  Respondents shall condition all contracts entered hereunder upon performance of the work in conformity to the terms of this Order.  Respondents or their contractors shall provide written notice of the Order to all subcontractors hired to perform any portion of the work required by this Order.  Respondents shall nonetheless be responsible for ensuring that their contractors and subcontractors comply with the requirements of this Order and perform the work contemplated herein in accordance with this Order.

## IV.  FINDINGS OF FACT

15.   A plume of liquid phase separated petroleum hydrocarbons (PSPHs), also known as oil, is floating on top of the groundwater underlying the Facility.  A map of the Facility showing the areal extent of the PSPH is set forth in Attachment 1 ("the PSPH Plume"). A plume of PSPH has also been defined on the adjacent oil refinery property currently owned by HOVENSA and previously owned by HOVIC.  This latter plume is the subject of a separate ongoing remediation project commenced by HOVIC and is outside the scope of this Order.

16.   Prior to the issuance of this Order, twenty-seven (27) monitoring wells were voluntarily installed by Respondents at the Facility.  These wells were sampled, and reports were submitted to EPA.  Dissolved phase petroleum hydrocarbon constituents ("DPPHC") have been detected within the site investigation wells.  The DPPHC has likely resulted from the PSPH Plume underlying the Facility and the PSPH plume underlying the adjacent oil refinery property.  Additional investigation wells may be required to define the areal extent, composition and concentration of the DPPHC underlying the Facility.

17.   Gas chromatograph analyses of PSPH samples collected  in January, 1997 from fourteen wells located on the Facility indicate that the PSPH in the plume was originally released from approximately 1978 to 1989.  Eleven of the fourteen samples taken at that time from wells at the Facility indicate that the PSPH release took place from 1978 to 1982.

-3-

18.     Gas chromatograph analyses of PSPH samples collected in August, 1997 from four wells located at the Facility indicate that the PSPH in the plume was originally released from approximately 1978 to 1991.

19.     Sources for the past releases of PSPH which may have contributed to the PSPH Plume at the Facility include fuel storage tanks which contained Bunker C (also known as No. 6 fuel oil), Number 2 fuel oil and Diesel at the Facility and the separate PSPH plume underlying the adjacent oil refinery property.

20.     The historical groundwater migration flow under the portion of the Facility where the PSPH plume is located, and under the adjacent HOVENSA property, although predominantly from north to south, also may have had localized southwesterly and northwesterly directions, contributing to the PSPH Plume and the DPPHC beneath the Facility. The natural background water quality of the groundwater beneath the Facility is such that the groundwater is not suitable for either consumption or typical industrial uses due to the high levels of total dissolved solids.

21.     Depending upon the hydrogeology and subsurface soils at the Facility, the groundwater, the PSPH Plume, and the DPPHC under the Facility may migrate toward and ultimately discharge into the surface waters of either the Port Alucroix/Krause Lagoon Ship Channel or the Caribbean Sea if no remedial steps are taken. However, there is no current evidence that the PSPH Plume and the DPPHC under the Facility have discharged into either the surface waters of the Port Alucroix/Krause Lagoon Ship Channel or the Caribbean Sea.

22.     The PSPH Plume will be carried and moved with the groundwater, although perhaps at a slower velocity than the groundwater. The mobile portion of the Plume can be expected to reduce in mass as it travels due to cohesive properties of the soil.

23.     The same migration pathways identified in paragraph 21 will apply to both the PSPH Plume and the DPPHC in the groundwater, although perhaps at different velocities than the groundwater.

24.     The PSPH Plume and DPPHC typically contain constituents that may present an endangerment to health or the environment.

25.     A.     Section 311(b)(3) of the federal Clean Water Act, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil into or upon the waters of the United States or adjoining shorelines in such quantities as may be harmful.

            B.     In 40 C.F.R. § 110.3, EPA has established that discharges of oil that may be harmful to the public health or the environment, include quantities that,

"(a) Violate applicable water quality standards; or

(b) Cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines. . . ."

26.    The PSPH Plume and DPPHC present in the groundwater under the Facility may present an imminent and substantial endangerment to health or the environment.

## V. CONCLUSIONS OF LAW

Based on the above Findings of Fact, and the administrative record, the Regional Administrator of EPA Region 2, has determined as a matter of law, that:

27.    The Respondents are "persons" as defined in Section 1004(15) of the Act, 42 U.S. C. § 6903 (15).

28.    The PSPH Plume and DPPHC present in the groundwater underlying the Facility constitute "solid waste" within the meaning of Section 7003 of the Act, 42 U.S.C. Section 6973, and as such term is defined in Section 1004(27) of the Act, 42 U.S.C. § 6903 (27).

29.    The Respondents have contributed or are contributing to the past or present "handling," or "disposal" of solid waste at the Facility, as those terms are defined in Sections 1004(3) and (33) of the Act, 42 U.S.C. § 6903 (3 and 33).

30.    The Respondents' past or present "handling," or "disposal" of solid waste at the Facility may present an imminent and substantial endangerment to health or the environment.

31.    The actions required to be taken under this Order are necessary to protect health or the environment.

32.    With regard to Section XI (Work To Be Performed) under this Order, Respondent HOVENSA shall be responsible for carrying out only the work requirements under subsection D, Paragraph 49. The other Respondents are jointly and severally liable for carrying out the work requirements under subsections A, B, and C (Paragraphs 42 through 48) and subsection E (Paragraph 50) of Section XI (Work to Be Performed). Compliance or noncompliance by one or more Respondents with any provision of this Order shall not excuse or justify noncompliance by any other Respondent.

## VI. DETERMINATION

33.    Based on the foregoing FINDINGS OF FACT AND CONCLUSIONS OF LAW, the Regional Administrator of EPA Region 2, upon receipt of evidence that the past and present handling, storage, and disposal of solid waste may present an imminent and

substantial endangerment to health or the environment, has determined that the issuance of this Order is necessary to protect public health and the environment.

## VII. ORDER

34.   Based on the foregoing FINDINGS OF FACT and CONCLUSIONS OF LAW and the foregoing DETERMINATION, IT IS HEREBY ORDERED THAT:

a.   Respondents shall perform all actions required by this Order, in accordance with the WORK TO BE PERFORMED provisions of this Order, as well as other provisions of this Order, as set forth below; and

b.   Respondents shall fully cooperate with EPA representatives in carrying out the provisions of this Order.

## VIII. PROJECT COORDINATORS AND PROJECT OPERATING COMMITTEE

35.   By no later than ten (10) calendar days after the effective date of this Order, EPA and each Respondent will designate a Project Coordinator ("PC"), and at least one alternate who may function in the absence of the designated PC, and shall provide a mailing address for both persons.

36.   By no later than twenty (20) calendar days after the effective date of this Order, Respondents shall submit to EPA for approval a written notification designating a Project Operating Committee (POC) consisting of one or more PCs. Each Respondent shall appoint a representative to be on the POC and provide a mailing address to EPA for that representative.

37.   EPA's PC and the POC shall be responsible for overseeing implementation of this Order.

38.   EPA and the Respondents have the right to change their PCs and alternate PCs, and shall inform all other parties in advance in writing should such change occur. Respondents have the right to change their POC and shall inform EPA in advance in writing should such change occur.

39.   EPA has designated Tim Gordon as PC and Matthew Schoen as Alternate PC.

## IX. NOTICES

40.   A. All written and verbal communications from EPA to the Respondents concerning this Order shall be directed to the designated PC for each Respondent. All written communications from Respondents to EPA, including all notices, documents, reports, and

-6-

other correspondence or submissions, shall be directed to: Mr. Raymond Basso, Chief, RCRA Programs Branch, U.S. EPA, 290 Broadway, New York, N.Y. 10007-1866.

B. Additionally, two (2) copies of each notice, document, report and other correspondence or submission <u>required by this Order</u> shall be sent to:

Mr. Tim Gordon
U.S. Environmental Protection Agency, Region 2
RCRA Programs Branch
290 Broadway
New York, New York 10007-1866

C.  Furthermore, one (1) copy of each notice, document, report and other correspondence or submission <u>required by this Order</u> shall be sent to each of the following persons at the addresses listed below:

Mr. Jim Casey
U.S. Environmental Protection Agency, Region 2
Caribbean Environmental Protection Division
Federal Building & U.S. Courthouse
5500 Veterans Drive, Rm. 142
St. Thomas, U.S. Virgin Islands 00802

Mr. Hollis Griffin
Virgin Islands Department of Planning and Natural Resources
Division of Environmental Protection
1118 WaterGut Homes
Christiansted, St. Croix, U.S. Virgin Islands 00820-5065

## X. RETENTION OF RECORDS

41.  The Respondents shall maintain all records relating to EPA's Findings of Fact in this document, including but not limited to, all  records related to the PSPH and DPPHC contamination at the Facility and work to be performed under the Order, as well as all documents responsive to EPA's RCRA Section 3007 information request letters issued in November 1998 and/or June 1999. The Respondents shall also maintain all records pertaining to this Order and its implementation, including the work to be performed pursuant to this Order.  Each Respondent shall make the above records available to EPA for inspection upon request.  Such records shall be maintained while this Order is in effect and for three (3) years following termination of this Order pursuant to Section XXVI below.

## XI. WORK TO BE PERFORMED

A. PSPH Plume Remediation

42.    A.  Within 60 calendar days of the effective date of this Order, the POC shall submit to EPA for its review and approval a draft work plan to remediate the PSPH Plume floating on the groundwater underlying the Facility.  This "PSPH Plume Remediation Work Plan" shall include a complete proposal for implementing PSPH Plume recovery and /or other remedial measures including: management of the recovered PSPH and groundwater; a definition of the proposed PSPH Plume clean-up objective; an estimation of the time period to achieve the clean-up objective; and a reporting and implementation schedule.

B.  The draft PSPH Plume Work Plan shall be developed in accordance with the following:  Joint Technical Proposal, consisting of the following three documents: a February 5, 1997 work plan entitled "St. Croix Alumina L.L.C. (Formerly VIALCO) Hydrocarbon Recovery Plan; Hess Virgin Islands Corp."; an addendum, dated May 26, 2000, setting out a proposal to remediate the PSPH Plume at the Facility; and a second addendum, dated August 15, 2000, which supplements the May 26, 2000 addendum and addresses management at the adjacent oil refinery property of the recovered petroleum product and groundwater.

43.    Within 30 calendar days of EPA's written approval of the PSPH Plume Remediation Work Plan, the POC shall commence implementation of the tasks in the PSPH Plume Remediation Work Plan.

44.    Within 120 calendar days of completion of all tasks in the approved PSPH Plume Remediation Work plan, the POC shall submit to EPA for review and approval a draft Final Report on the PSPH Plume remediation.  The draft Final Report shall contain recommendations as to whether additional monitoring, investigation or recovery with respect to the PSPH Plume are required, and, if required, a proposal for such actions.

B. DPPHC Work Plan

45.    Within 120 calendar days of the effective date of this Order, the POC shall submit to EPA for its review and approval a draft work plan to adequately characterize the composition and areal extent of the DPPHC related to the PSPH Plume and to evaluate the risks posed to human health and the environment by the DPPHC ("DPPHC Work Plan").  The draft DPPHC Work Plan shall include proposals for any additional investigation work necessary to adequately characterize the composition and areal extent of the DPPHC so that any risks can be accurately assessed.  The DPPHC Work Plan shall contain a reporting and implementation schedule.

46.    Within 30 calendar days of EPA's written approval of the DPPHC Work Plan, the POC shall commence its implementation.

47.   Within 120 calendar days of completion of all tasks in the approved DPPHC Work Plan, the POC shall submit to EPA for review and approval a draft Final Report on the composition and areal extent of the DPPHC related to the PSPH Plume and an evaluation of threats to human health and the environment posed by the DPPHC. The draft Final Report shall contain recommendations as to whether additional monitoring, investigation or remediation with respect to the DPPHC are required, and if required, a proposal for such actions.

C. Progress Reports

48.   Commencing within 90 calendar days of the effective date of this Order, and every 90 days thereafter until termination of this Order, the POC shall submit written Quarterly Progress Reports summarizing all activities implemented pursuant to the requirements of this Order. These progress reports shall not replace or be in lieu of the final reports required under paragraphs 44 and 47 above. The quarterly progress reports shall not be subject to EPA approval. The time for submittal of the quarterly progress reports may be extended by the EPA PC in writing for good cause shown.

D.    Management of Recovered Petroleum and Groundwater

49.   The requirements of this paragraph 49 shall apply only to Respondent HOVENSA. HOVENSA shall take the steps needed to, and agrees to, receive and manage at the adjacent petroleum refinery the commingled and/or phase separated petroleum and groundwater recovered at the Facility as a result of remediation of the PSPH Plume and DPPHC pursuant to this Order. HOVENSA shall perform the work described in this paragraph in conformance with the Second Addendum to the St. Croix Alumina L.L.C. (former VIALCO) Hydrocarbon Recovery Plan dated August 15, 2000. HOVENSA shall compensate the other Respondents by paying fair market value for the petroleum recovered and shall manage and use the recovered petroleum in accordance with the Second Addendum. EPA may, upon written request from HOVENSA specifying reasonable grounds therefor, allow for management of the commingled fluid and the recovered petroleum in a manner different from that set forth in the Second Addendum.

E. EPA Approvals of Work Plans and Reports

50.   With the exception of reports under paragraph 48, all work plans and reports required under Paragraphs 42 through 47 of this Order shall be subject to EPA's review and approval. Any requests for modification of those approved work plans and/or reports, shall be submitted in writing and shall be subject to EPA's review and approval. All approvals by EPA of work plans and/or reports required under paragraphs 42 through 47 of this Order, and all modifications, if any, must be made in writing by either the Chief, RCRA Programs Branch, EPA Region 2, or EPA's designated Project Coordinator or Alternate Project Coordinator.

## XII. EMERGENCY PROVISIONS

51. In the event the Respondents identify an immediate and substantial threat to human health and the environment, related to or arising out of the PSPH Plume or the DPPHC, the Respondents shall immediately notify EPA orally or electronically, and in writing within forty-eight (48) hours, summarizing the available information on immediacy and magnitude of the potential threat to human health and the environment. The Respondents shall thereafter submit to EPA for approval, within fourteen (14) calendar days, a plan to mitigate this threat. EPA will approve or modify this plan, and Respondents shall implement this plan as approved or modified by EPA. In the case of an extreme emergency, Respondents may act as they deem appropriate at their own risk.

52. If EPA determines that activities undertaken by Respondents pursuant to this Order, whether in compliance or non-compliance with this Order have caused or may cause a release of a solid or hazardous waste, or hazardous constituent, or may pose a substantial threat to human health and/or the environment, EPA may direct Respondents in writing to stop further implementation of this Order, or a portion of this Order, for such period of time as may be necessary to abate any such release or threat and/or undertake any action which EPA determines to be necessary.

## XIII. EFFECTIVE DATE

53. The effective date of this Order shall be fourteen (14) calendar days after the date the Order is signed by the Regional Administrator, EPA Region 2. EPA will make all reasonable efforts to notify Respondents in a timely manner of the date of signing of this Order.

## XIV. RESERVATION OF RIGHTS

54. EPA expressly reserves, without limitation, all of its statutory and regulatory powers, authorities, rights, remedies and defenses, both legal and equitable, including the right to seek injunctive relief, cost recovery, monetary penalties, and/or punitive damages.

55. This Order shall not be construed as a covenant not to sue, or as a release, waiver or limitation of any rights, remedies, defenses, powers and or authorities which EPA has under RCRA, the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), or any other statutory, regulatory or common law authority of the United States.

56. This Order shall not limit or otherwise preclude EPA from taking any additional legal action against any of the Respondents, or other parties, should EPA determine that any such additional legal action is necessary or warranted.

57.   In the event EPA determines that Respondents have failed to perform any portion of the work required by this Order, EPA shall provide written notification of such determination and a description of such noncompliance to Respondents. Respondents shall have thirty (30) days, or such additional time as EPA agrees to in writing, to perform such work. In the event the Respondents fail to perform such work within the appropriate time period, EPA may perform any and all portions of the work as EPA deems necessary to protect human health or the environment. However, prior to performing the work, Respondents may invoke Dispute Resolution procedures set forth in Section XXV to dispute EPA's determination that Respondents failed to perform the work.

58.   Notwithstanding compliance with the terms of this Order, the Respondents are not released from liability for the costs of any response actions taken by EPA. EPA reserves the right to seek reimbursement from the Respondents for any costs incurred by the United States.

## XV. PUBLIC PARTICIPATION

59.   EPA reserves the right, in its sole discretion, to provide for public notice, opportunity for public meeting in the affected area, and a reasonable opportunity for public review and comment. Following receipt of a written request from EPA, the POC shall make any non-privileged documents developed pursuant to the requirements of this Order available for public review and comment. Additionally, as requested by EPA, the POC shall assist EPA in effectuating the above-described public notice, public meeting, and/or public review and comment.

## XVI. STIPULATED PENALTIES

60.   Unless Respondents are excused under the "Force Majeure and Excusable Delay" provision of the Order, or unless the schedule is adjusted as otherwise provided under the terms of this Order, Respondents shall pay a stipulated penalty for failure to comply with any requirement, term, or condition set forth in or required by this Order. The stipulated penalty for each non-complying act is as follows:

| Period of Failure to Comply | Penalty for Noncompliance per Day |
|---|---|
| 1st through 7th day | $250.00 |
| 8th through 30th day | $1,500.00 |
| 31st day through 6oth day | $3,000.00 |
| 61st day and thereafter | $5,000.00 |

   A. Stipulated penalties shall be paid by cashier's or certified check, payable to the Treasurer, United States of America, and mailed to the EPA - Region 2 (Regional Hearing Clerk), P.O. Box 360188M, Pittsburgh, Pennsylvania 15251. Said payment(s) shall be identified

as a stipulated penalty being paid pursuant to this Order and shall reference the Docket Number set forth on the title page of this Order.

B. All stipulated penalties begin to accrue on the day each act of noncompliance with any requirement, term, or condition set forth in or required by this Order first takes place. Said stipulated penalties shall continue to accrue through, and including, the day on which any failure to comply with such requirement, term, or condition is remedied. Nothing herein shall preclude, or is intended to preclude, the simultaneous accrual of separate stipulated penalties for each separate act of noncompliance with this Order. Penalties shall accrue regardless of whether EPA has notified the Respondents of the act or acts of non-compliance, but need only be paid upon demand. The Respondents are jointly and severally responsible for any stipulated penalty payment due under this Order.

C. After receipt of a demand notice from EPA for stipulated penalties pursuant to this Section of the Order, Respondents may within thirty (30) days of such demand, provide EPA with a written explanation of why they believe the stipulated penalties are not appropriate for the act(s) of non-compliance cited by EPA. Such written explanation shall be sent to: Mr. Raymond Basso, Chief, RCRA Programs Branch, U.S. EPA, 290 Broadway, New York, NY 10007-1866.

D. The Chief of the RCRA Programs Branch may, in his sole discretion, reduce or eliminate such stipulated penalties based on the Respondents' written explanation as specified in C., immediately above. If the Chief does not eliminate the stipulated penalties, then EPA will again notify Respondents that the original or reduced stipulated penalties must be paid by the Respondents. Unless Respondents invoke Dispute Resolution under Section XXV of this Order, the Respondents shall pay the stipulated penalties as set forth in EPA's notice pursuant to this sub-section within thirty (30) days of receipt of the notice.

E. All penalties owed to EPA under this Section shall be due and owing as of the date of the Respondents' receipt of the notice, described in C., above. Interest shall also accrue on any amount not paid when due at the rate established by the Secretary of the Treasury pursuant to 31 U.S.C. § 3717. EPA's delay or failure to send such notice in no way affects EPA's right to collect such funds.

F. If the Respondents fail to pay stipulated penalties as required under this Order, EPA may refer this matter to the Department of Justice and/or Department of Treasury for collection under applicable law with respect to the Respondents. Nothing in this section, however, limits, or shall be construed as limiting, any rights or remedies available to EPA to enforce this Order and to seek compliance with the terms and conditions of this Order or any other applicable law or regulation.


## XVII. NON-RELEASE OF OTHER CLAIMS AND PARTIES

61.     Nothing in this Order shall constitute, or be construed to constitute, a release from any

claim, cause of action or demand in law or equity brought by EPA against any person, firm, partnership, or corporation for any liability it may have arising out of, or relating in any way to, the generation, storage, treatment, handling, transportation, release, or disposal of any hazardous constituent, hazardous substance, solid waste, hazardous waste, pollutant, or contaminant found at, taken to, taken from, or emanating from or to the Facility or the adjacent HOVENSA oil refinery property.

## XVIII. INDEMNIFICATION OF THE UNITED STATES GOVERNMENT

62.    The Respondents shall indemnify, save and hold harmless the United States Government, its agencies, departments, agents, and/or employees, from any and all claims or causes of action arising from or on account of acts or omissions of the Respondents or their agents, independent contractors, receivers, trustees, subcontractors or successors and/or assigns in carrying out activities required by this Order.  This indemnification shall not be construed as in any way affecting or limiting the rights or obligations of the Respondents or the United States under their various contracts or statutes.

## XIX. OTHER APPLICABLE LAWS

63.    The Respondents shall undertake all actions required by this Order in accordance with the requirements of all applicable local, territorial, state and federal laws and regulations. Respondents shall be responsible for timely application for and diligent pursuit of obtaining all permits or approvals necessary to perform the work required by this Order.

## XX. SEVERABILITY

64.    If any provision or authority of this Order or the application of this Order to any party or circumstance is found to be invalid, or is temporarily stayed, the remainder of this Order shall remain in force and shall not be affected thereby.

## XXI. FORCE MAJEURE AND EXCUSABLE DELAY

65.    Respondents shall perform all the requirements of this Order within the time limits set forth, approved, or established herein, unless the time limit is modified pursuant to Paragraph 77, or unless the performance is prevented or delayed solely by events which constitute a <u>force majeure</u>.  A <u>force majeure</u> is defined as any event arising from causes not reasonably foreseeable and beyond the control of the Respondents which could not be overcome by due diligence and which delays or prevents performance by a date required by this Order.  Such events do not include unanticipated or increased costs of performance, changed economic circumstances, or normal precipitation events.  For purposes of this Order, force majeure events include strikes, hurricanes, and tropical

-13-

storms.

66.    Respondents shall notify in writing the EPA Project Coordinator within ten (10) calendar days after becoming aware of any event which is known, or should be known, to have constituted a <u>force majeure</u>.  Such notice shall provide available information on the estimated length of delay, including necessary demobilization and remobilization, its causes, measures taken or to be taken to minimize the delay, and an estimated timetable for implementation of these measures.  Respondents must adopt all reasonable measures to avoid and minimize the delay.  Failure to comply with the notice provision of this section shall constitute a waiver of the Respondents' right to assert a <u>force majeure</u> and shall be grounds for EPA to deny an extension of time for performance.

67.    After receiving notice that Respondents are invoking the <u>force majeure</u> provisions of this Order, EPA shall respond in writing indicating either EPA's agreement that the event constitutes a <u>force majeure</u> or its disagreement and the reasons therefore.  A single Respondent may provide notice on behalf of one or more Respondents.

68.    If EPA and the Respondents agree that a <u>force majeure</u> has occurred, the time for performance may be extended, upon EPA approval, for a period equal to the delay resulting from such circumstances or such longer time as EPA determines appropriate.  This shall be accomplished through written amendment to this Order, or modifying the schedule in a previously approved work plan.  Such an extension or modification will not alter the schedule for performance or completion of any other tasks required by this Order unless these are also specifically altered in accordance with the Modification Section of this Order, or by modifying a previously approved work plan.

69.    In the event that EPA and the Respondents cannot agree that any delay or failure has been or will be caused by a <u>force majeure,</u> or if there is no agreement on the length of the extension, the dispute will be resolved in accordance with the Dispute Resolution provisions contained in this Order.

## XXII. ON-SITE AND OFF-SITE ACCESS

70.    Until this Order is terminated,  Respondents agree to provide EPA and its representatives, authorized designees, employees, agents, contractors, subcontractors, or consultants access at all reasonable times to the Facility and adjacent properties which are or have been owned or operated by one or more of the Respondents for the purpose of conducting any activity pursuant to the Order, including but not limited to, the following purpose(s): observing activities at the Facility related to performance of the work required by the Order,  conducting sampling or monitoring relating to the PSPH Plume or the DPPHC, and verifying information or data relating to the Order.

71.    Upon request, Respondents shall make available to EPA for inspection, copying, or photographing all non-privileged records, files, photographs, documents, or any other

non-privileged writing, including monitoring and sampling data, that pertain to any work relating, or undertaken pursuant, to this Order.

72. To the extent that work required by this Order must be performed on property not owned or controlled by any of the Respondents, Respondents shall use best efforts to obtain "Site Access Agreements" to perform such work within thirty (30) days of the date the Respondents become aware or should be aware of the need to perform such work. Any such access agreement shall provide for reasonable access by EPA. In the event that Site Access Agreements are not obtained within the thirty (30) day period, Respondents shall notify EPA, in writing, documenting their best efforts to obtain such agreements.

73. Nothing in this Order shall be construed to limit or otherwise affect EPA's right of access and entry pursuant to any applicable laws and regulations, including the Act and CERCLA.

74. Nothing in this Order shall be construed to limit or otherwise affect Respondents' liabilities and obligations to perform corrective action, including corrective action beyond the Facility, notwithstanding the lack of access.

## XXIII. NO FINAL AGENCY ACTION

75. Notwithstanding any other provision of this Order, no action or decision by EPA pursuant to this Order, including without limitation decisions of the Regional Administrator of Region 2, or any authorized representative of EPA shall constitute final agency action giving rise to any rights of judicial review prior to the United States' initiation of a judicial action for a violation of this Order, which may include an action for penalties, an action to compel Respondents' compliance with the terms and conditions of this Order, or such other relief as may be available at law.

## XXIV. MODIFICATION

76. This Order may be modified/amended by Respondents and EPA. Such amendment(s) shall be in writing, shall first be signed by each Respondent, and shall have as an effective date, the date of signature by the Regional Administrator of Region 2.

77. Notwithstanding the above, EPA's Project Coordinator and Respondents' POC may agree to changes in the scheduling of events. Any such changes must be requested in writing by the Respondents and be approved in writing by EPA's Project Coordinator.

78. No informal advice, guidance, suggestions, or comments by EPA regarding reports, plans, specifications, schedules, and any other writing submitted by the Respondents will be construed as an amendment or modification to this Order.

## XXV. DISPUTE RESOLUTION

79.   EPA and the Respondents shall use their best efforts to informally and in good faith resolve all disputes and differences of opinion.  Notwithstanding the above, if Respondents disagree, in whole or in part, with any disapproval or modification or other decision or directive made by EPA pursuant to this Order, Respondents shall submit written notice and submission to EPA's Director of Division of Environmental Planning & Protection (DEPP) ("EPA's Director"), with a copy to the other EPA persons listed in paragraph 40 B., above, of their objections and the basis (bases) therefor within thirty (30) days of receipt of EPA's disapproval, modification, decision, or directive.   Said notice and submission shall set forth the specific points of the dispute, the position Respondents are maintaining, the basis (bases) for the position, and any matters Respondents consider necessary for EPA's determination. Within sixty (60) days of the EPA Director's receipt of the Respondent's written notice and submission invoking Dispute Resolution pursuant to this Order, or by such other date as may be agreed upon by the parties, EPA's Director of DEPP shall provide to Respondents in writing his or her decision on the pending dispute and the basis for his or her decision, which decision shall be binding on EPA and the Respondents.  EPA and the Respondents may continue to confer and to use informal efforts to resolve the dispute during the period that EPA's final determination is pending.

80.   The existence of a dispute as defined herein, and EPA's consideration of such matters as placed into dispute, shall excuse, toll, or suspend during the pendency of the dispute resolution process the compliance obligation or deadline which is in dispute and any other obligation or deadline which is demonstrably dependent on the matter in dispute, and EPA shall not seek to assess a penalty for noncompliance with the obligation or deadline for the period of time during which the obligation or deadline was excused, tolled, or suspended, regardless of the decision on the dispute, so long as EPA determines that the dispute was brought in good faith.

## XXVI. TERMINATION

81.   This Order and all of its terms and provisions shall remain in effect until all of the activities called for by the Order are completed and Respondents are so notified in writing by the EPA.  Such termination notice shall be signed by the Regional Administrator of Region 2. EPA will make all reasonable efforts to provide the termination notice to the Respondents in a timely manner.  Respondents may request that EPA Region 2 provide Respondents with such a notice, and shall supply EPA with such information, including certifications, as EPA may specify in connection with action on such request.

## XXVII. ENFORCEMENT

82.   The failure of the Respondents to comply with any provision of this Order may be considered a violation of this Order.  Such violation may give rise to an enforcement

action pursuant to Section 7003(b) of the Act, 42 U.S.C. § 6973(b), for civil penalty or other relief as appropriate.

83. Nothing herein shall preclude EPA from taking any additional enforcement actions, and/or such other actions as it may deem necessary for the abatement or prevention of an imminent threat to public health or the environment arising from conditions at the Facility. Nor shall EPA be precluded from taking any such other enforcement actions as EPA may deem necessary based on additional information about conditions at the Facility or under other environmental laws.

## XXVIII. GENERAL PROVISIONS

84. Nothing in this Order constitutes a satisfaction or release from liability with respect to any conditions or claims arising as a result of past, current or future operations, ownership or use of the Facility or adjacent properties by the Respondents, their agents, officials, successors or assigns.

85. Nothing in this Order affects any right, claim, interest, defense or cause of action of EPA with respect to the Respondents, other than those causes of action and matters addressed by this Order.

## XXIX. CONSENT

86. The Respondents consent to and agree not to contest EPA's jurisdiction to issue, enforce, or compel compliance with, any term of this Consent Order.

87. The Respondents consent to the issuance of this Order and its terms, and agree to undertake all actions required by the terms and conditions of this Order. The Respondents consent to the issuance of this Order, as an Order, pursuant to Section 7003 of RCRA, 42 U.S.C. § 6973, and explicitly waive any rights they may have to request a hearing on this matter.

88. By signing this Consent Order and taking actions under this Consent Order, the Respondents do not necessarily agree with the Findings of Fact, Conclusions of Law, or Determinations. Further, acts pursuant to this Consent Order by Respondents shall not be considered an admission of liability and this Order shall not be admissible as evidence against the Respondents in any judicial or administrative proceeding other than a proceeding by the United States, including EPA, to enforce this Consent Order, or to enforce a judgment relating to this Order. The Respondents agree not to contest the validity or terms of this Consent Order in any action brought by EPA to enforce this Consent Order or to enforce a judgment relating to this Order.

89.    The Respondents agree not to contest and agree to waive any defense concerning the validity of this Order, or any particular provision contained herein.

90.    The signatory to this Order for each Respondent certifies that he or she is fully authorized to sign this Order on behalf of the specific Respondent.

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signatory Page for St. Croix Alumina, L.L.C.

By: _Thomas D. Russell_          Date: _Nov 16, 2000_

_Thomas G. Russell_

Signatory's Name (Print):
Title: LOCATION MANAGER
Company: St. Croix Alumina, L.L.C.

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signatory Page for ALCOA Alumina and Chemical, L.L.C.

By: _____     Date: 11/27/00

_____

Signatory's Name (Print):
Title:     R. U. President A.W.A Atlantic
Company:   Alcoa World Alumina

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signatory Page for Virgin Islands Alumina Company

By: _____        Date: 30 November 2000

    Gerald J. Kitchen
_____
Signatory's Name (Print):
Title: Vice President
Company: Virgin Islands Alumina Company

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signatory Page for Century Aluminum Company, Inc.

By: _____          Date: 30 November 2000

Gerald J. Kitchen
_____
Signatory's Name (Print):
Title: Executive Vice President
Company:  Century Aluminum Company

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signatory Page for Lockheed Martin Corporation

By: _____     Date: 11/30/00

JOHN P. WIGGIN
_____
Signatory's Name (Print):
Title: Director, Corporate ESH Operations
Company: Lockheed Martin Corporation

-23-

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signature Page for Hess Oil Virgin Islands Corp.

By: _J. Barclay Collins_  Date: _11/29/__

_J. Barclay Collins_
Signatory's Name (Print):
Title: Vice Presi De n T
Company: Hess Oil Virgin Islands Corp.

-24-

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

Signature Page for HOVENSA, L.L.C.

By: _Sagebien_          Date: _11/22/00._

_Rene Sagebien_

Signatory's Name (Print):
Title:   _President / C.O.O._
Company:  _HOVENSA L.L.C._

-25-

Administrative Order on Consent, Docket No. RCRA-02-2001-7301

**It is so Ordered:**

Date: 5/10/01

William J. Muszynski
Acting Regional Administrator
U.S. Environmental Protection Agency
Region 2
290 Broadway
New York, New York 10007-1866

-26-

## ATTACHMENT

1. Map of a portion of the St. Croix Alumina Facility, showing the areal extent of the PSPH Plume (based on February 2000 fluid measurments).

ST. CROIX ALUMINA

HOVENSA L.L.C. GRID SYSTEM (ft)

Current Piping Plan
(VW14, VW13, VW6)

Expanded Piping Plan
(VW20, VW21, VW26)

Oil Thickness
(ft)

| | |
|---|---|
| 2.1 | |
| 1.8 | |
| 1.5 | |
| 1.2 | |
| 0.9 | |
| 0.6 | |
| 0.3 | |

LEGEND

| | |
|---|---|
| 0.00 | OIL THICKNESS, FT |
| —0.5— | ISOPACH CONTOUR |
| ✧ | OBSERVATION WELL |
| ● | RECOVERY WELL |

FEBRUARY 2000 DATA

ALUMINA PLANT

Flood Control Channel

Refinery

Process Area II

B.T.X. Tank

Tank Field No. 2

Tank Field No. 6

Tank Field No. 1

Tank Field No. 5

Former SCPC
Process Area

Non Process Storage Area

TO NELSON EVANS

GATE

TRACK

TENNIS COURT

In the Matter of St. Croix Alumina, L.L.C., et al., Docket No. RCRA-02-2001-7301

## CERTIFICATE OF SERVICE

I certify that I have this day caused to be sent the foregoing Administrative Order on

Consent ("AOC"), dated May 16, 2001, bearing the above-referenced docket number, in the

following manner to the addresses listed below:

Copy by Certified Mail/
Return Receipt Requested:

Century Aluminum Company
c/o Gerald Kitchen, Esq.
Executive Vice President, General Counsel
2511 Garden Road, Suite A-200
Monterey, CA. 93940-5331

Christopher Colman, Esq.
    Amerada Hess Corporation
One Hess Plaza
Woodbridge, New Jersey 07095

Virgin Islands Alumina Company (VIALCO)
c/o Eric Schweitzer, Counsel
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
P.O. Box 11206
Columbia, South Carolina 29211

ALCOA World Alumina, L.L.C. (ALCOA)
St. Croix Alumina L.L.C. (SCA)
c/o Marc Ross, Counsel for ALCOA and SCA
ALCOA Corporate Center
201 Isabella Street at 7th Street Bridge
Pittsburgh, PA. 15212-5858

Janet Weller, Esq..
Counsel for Hess,  HOVENSA
and HOVIC
Cleary, Gottlieb, Steen & Hamilton
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801

Lockheed Martin Corporation
c/o Mary Morningstar, Esq.
Assistant General Counsel
6801 Rockledge Drive
Bethesda, MD. 20817

Dated: 5-16-01
          New York, New York

Doris Ahearn
Secretary